Debigny, J.
J. delivered the opinion of the court. The plaintiff's son died, leaving his wife, the defendant, in a state of pregnancy.- Some weeks after, she was delivered of a child, who lived a few hours and died. The question is did this child inherit?
? Now withstanding the shocking contradictions which fill the depositions, given at different times by the same witnesses, it may be considered as proved, that the child was born after the period, posterior to which children are deemed capable of living, that he was born alive, without any apparent defect of conformation, and that he lived seven or eight hours.
There is, therefore no doubt, that according to the Roman law, and to the laws of many modern nations, this child would be deemed capable of inheriting.
In Spain, however, the laws of which were, and have continued to be ours, where not repeal- ed, there exists a particular disposition, by which it is further required, that the child, in *94 or to be considered as naturally born, and not abortive, should live twenty-four hours, is that law still in force among us, or is it virtually repealed by the expressions used in our civil code, in relation to this subject?
Of the different articles, in which our code has occasion to touch upon, two may be select ed as bearing more directly upon the question before us. The first is the definition of what is an abortive child the second is that which declares, that the child born incapable of living, is incapable of inheriting.
“Abortive children, according to that definition, are such as by an untimely birth, are either born dead, or incapable of living ” No such thing is required here, as their living twenty-four hours. Hence it is argued that the Spanish law, which made that circumstance necessary, is impliedly repealed. Civ. Code 8, act. 6.
It must not he lost sight of, that our civil code is a digest of the civil laws, which were in force in this country, when it was adopted ; that those laws must be considered as untouched, wherever the alterations and amendments, introduced in the digest, do not reach them; and that such parts of those laws only are repealed, as are either contrary to, or incompatible with the provisions of the code.
*95 Is the definition given of abortive children in the code, incompatible with the disposition of the law 2, tit. 8, book 5, of the Recopilacion de Castilla, which declares that those will be deemed abortive, who shall not live twenty-four hours? We think not. The definition given in the code, must hold as good in Spain as any where else, for it is dictated by nature itself : " the abortive child is that, which from an untimely birth, is born incapable of living."But how shall that be ascertained? The law above cited says that, to remove doubts on the subject, the child shall be reputed abortive, if he has not lived twenty-four hours.-So our civil code provides that, in order to inherit, the child must be born capable of living ( viable;} and the Recopilacion de Castilla, requires a legal presumption, that he was capable of living-that he shall have lived twenty-four hours.
Again, it is said that living twenty-four hours is no proof of the capacity to live ; for that children, after an untimely birth, will sometimes live several days and more.-Tbat is very true. But as the time of conception is uncertain, and great doubts must often exist, as to the length of gestation, when a child is brought into the world, a general rule is provided, by which the capability of the child to live, is so far tested *96 At the same time, where, from the recentness of the marriage, or the absence of the husband it can be ascertained, that the child was born before the epoch, after which he may live, he is declared abortive, though he should have lived twenty-four hours. This law might certainly be known to be founded on very good reasons. But we are not here deliberation on its adoption. Wise or absurd, it exists, and must be obeyed.
It has been observed, that living twenty-four hours cannot he deemed required, as a proof of the capability to live, for that baptism is also made a requisite, without which the child is reputed abortive, a circumstance which has surely nothing to do with the constitution of the in~ fant. We do not see the necessity of the conclusion. Baptism is required from motives of religion, totally unconnected with the reasons which may have induced the legislator, to establish the other condition.
It is, therefore, ordered, adjudged and de- creed that the judgment of the district court, he reversed ; and that judgment be entered in favor of the plaintiff, for two-thirds of the neat amount of the estate of his deceased son.
*97 Livingston, on a motion for a rehearing. By the reasons alledged, for the decree of reversal in this use, it is admitted, " that the child was born after the period posterior to which, children are deemed capable of living, that he was born alive, without any apparent defect of conformation, and that be lived seven or eight hour;" and the cause is decided simply on the ground, that the law of the Recopilacion 2, 8, 2, is in force in this state.
It is proposed respectfully to controvert this position.
It is true, that the civil code of this state, purports to be a digest of the civil laws previously in force-but it is also to be observed, that even in the title, (from whence this definition is drawn) it is added, "with alterations and amendments, adapted to the present system of government." And in the law of the 31 March, 1808, promulgating that code, this title is recited verbatim, the code is declared to be in force in the territory, and it is ordered to have "full execution," and the 2d. section repeals all former laws inconsistent with it.
The law, thus declared and ordered to be carried into full execution, contains two provisions only, applicable to this discussion.
*98 I. The first, which defines abortive children, to be such as by no untimely birth, are either born dead, or incapable of living. What was the definition of an abortive child, by the pre-existing law? Was it the same given by the code, or different? And in the latter case, which definition must the court adopt ? The pre-existent definition, is contained in the law above referred to, 5 Rec. 8, 2. Like the code. it purports to give a definition.
"To avoid doubts on the question,whether a child is abortive or naturally born," it proceeds to define, that those children shall be considered as abortive, who are not born entirely alive, who do not live 24 hours, and who were not baptised. By comparing these definitions, it will be found, that of the three requisites contained in the Spanish law, not one contained in the code. But that this latter requires three things, totally distinct from the former, to constitute abortion ; 1 being born dead: 2 being born incapable of living: 3 that the death or incapacity to live, are the effects of an untimely birth. But not one word of the " todo vivo" of the twenty-four hours, or the baptism. The definitions of an abortive child, as drawn from the spanish law, and from our code, are not the same. Which are we to adopt? law, law from our ibm nul~ code arc not the same. Which are we to akjglasjgl Uic taic iuen att~ we o adopt ?
*99 There can be but one answer to this ; we must adopt the last: but can we superadd the former? Can, we ask as well the ruquisites of the definition, in the law of the Recopilacion as those demanded by the code ? I think pot.
A definition is ex vi termini an exclusion of every thing not expressed. The law therefore which defines a right; a crime, or incapacity, excludes every thing, not contained in the definition, as completely as if it had used regular words, and said, that nothing should confer the right, inciv the guilt of the crime, or make one subject to the incapacity, but the circumstances contained in the definition. A posterior act therefore giving a different definition, from the pre-existent law, necessarily repeats it. Let us exemplify each of these.
1. A right. Supposeby the laws of a state, defining the right to vote, it should be declared, that, " every free, white man, who had lived twenty-four months in the country, should have this right," and that by a subsequent law, pur- porting to have the same object, it should be en- acted-that voters shall be "such free persons as live in the country." Omitting the, word white, and saying nothing of the term of residence. Can there be a doubt, that in such case, the man of colour, who had gained a residence colour, who had gained a residence *100 by being domiciliated for twelve months, would have the right to vote?
2. The definition of a crime. Suppose by the present laws, that arson shall be defined. “ The wilful burning of a dwelling house, which had been inhabited within twenty-four hours previous to the fact, or the, burning as aforesaid of any barn or cotton gin."-And that an act should afterwards pass, purporting to be a digest of the penal code now in force, with alterations and amendments, in which arson should be described to be the “ wilful burning of a dwelling house or barn," can there be a doubt, that a person under this act, would be guilty, if he were to burn a dwelling house, although it had not been ihabited for twenty-four hours, and would not be guilty, if he were to burn a cotton gin.
3. A disability. Suppose the law under the head if " those who are incapable of making wills" should be, that those, only are incapable, who are not 20 years of age, and are not eman- cipated, and that a subsequent law should say, " those alone are incapable of making a will, who are under 20, without saying any thing of emancipation. In this case, who would say that the emancipated minor, between 20 and and *101 21, could make a will under the first law, or could not under the second.
In all these cases, then we find that the subsequent legislative definition, corrects the former; and if the reasoning be good, we must conclude that the laws in which an abortive child is defined, must be taken from our civil code, not from the laws of the Recopilacion.
II. The second provision in the code, and the one most applicable to our argument, is page 150, art. 64 and 65.
Our question is, whether a child born alive, within the legal period, and without any defect of conformation (I state the facts as agreed to by the court) be capable of inheriting. Let us consult our text. The chapter treats " of the incapacity or unworthiness of the heirs" and the title is " of successions” and the work itself is a" Digest of the laws in force, with altera- tion and amendments” whatever general rules are laid down there, on the subject, must ex elude every former provision, inconsistent with the chapter. It proceeds to give us those rules.
The first,art. 64, we may suppose, to be an answer to the question-Who have the capacity to inherit? The response is clear and explicit. All free persons, with the single excep single excep *102 tion, of the child who is born not capable of living. I say the single exception, for the other of the "child not conceived" is one only in terms, because the "child not conceive at the death of the father, is not his child, and there- fore, not coming within the rule, cannot be made an exception.
Then follow the answers to the other question, who are unworthy to inherit ? With which we have nothing to do, except for illustration.
Here then,is a general rule laid down, in a digest which was intended, (according to the preamble to the law of 1808) to make known the laws which have been preserved after the abrogation of those &c. "and to collect them in a single work, which might serve as a guide for the decision of the court and juries"-and which the same law declares " shall have complete executions."
This rule declares that, " all free persons are capable of inheriting, who are born capable of living.” If we ask something else, to complete this capacity, whether that something else existed in a former law or not, do we not add another exception, to the only one contained in the rule, and what, else is this, but altering the law or in other words, acting contrary to it.
If we say, that a free person born capable of of *103 Living, shall not inherit, because he died twenty-three hours after he was born : is it not most clear, that we break the rule which says, that all free persons capable of living, have the ca- pacity to inherit?
The lawof the Recopilacion, establishes one rule on this subject, the code establishes ano- ther. The one requires more, the other requires less. If to inherit under the first, three be re- quired ; and under the second, only one; is it not mathematically demonstrable, that you can- not give effect to the last law, if you insist on the requisites demanded by he first ; and if yo do not give effect to a law, do you not break it?
These principles may. I think, receive some illustration from that part of the same chapter, which relates to unworthiness to inherit.
By the Spanish law, Part. 6, 3, 4, a person banished; one condemned to the mines. (leaving apostates and heretics out of the question) a per son born of an incestuous connexion, were deemed unworthy to inherit, as instituted heirs, and by Part. 6, 7, 13, six other causes of unworthiniss to succeed. are enumerated. Of all these, our code contains but three, and those all different in form, some in substance, from any of the causes of unworthiness contained in the Partidas. Now would it not be someswhat like it not be someswhat flkc *104 t. a solecism to say, that the, law whieb p~re~cribes nine cases of unworthness, is consistent with the law which says, there shall be only three? Woul4 not this construction lead to tue evil "of recurring to a multiplicity of books, which be~ ing for the most part, written in foreign lan~ guages, offer in their interpretation ine~hausti-Me sources of litigation ?" low far this evil would extend, it is difficult to foresee, if the general rules laid down by the code, are not to exclude the former provisions on the same sub~ jects, in the existent law.
Livingston and Mazureau for the plaintif Moreau for the defendant.

If these general rules do exclude them, the question is atanend; because th~ living twenty~ four hours, is not gi~ eu by the Recopilation as a defiuihion or expLtuation of the word viable, or the phrase, capable of living, hit as a new and distinct condilon of succeeding. and an explanation of what shall be dcened au abortive birth, of both of which, we thud our law has given other conditions, and different explanations.

The court, Martin J. dissentiug, denied the rehearing.