MARY ADELE NELDER, Wife of L. L. Kerr, v. Testamentary Executors of L. B. MACARTY, et al.

The notary concluded the will thus: "This will has been dictated to me by the sieur *Macarty*, and I, the said notary, have written the whole in my hand, such as it has been dictated to me by the said testator, in the presence of the witnesses hereafter named and undersigned," &c. The question being, whether the words used import that the will was *dictated* in the presence of the witnesses, or was only *written* in their presence. *Held*: The words, in the presence of the witnesses hereafter named and undersigned, in this connection, would apply indiscriminately to the whole clause—to the dictation as well as to the writing.

When the father, by will, in favor of a natural child, disposes of the portion of his estate permitted him by law to dispose of, the only restraint which the law imposes on the rest of his property is, that the disposition of it be not in favor of any other persons than legitimate relations or a public institution.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *A. N. Ogden* and *C. Roselius*, for plaintiff. *Benjamin* and *Micou*, *Janin* and *Taylor*, *Pitot* and *Eyma*, *Maurian* and *LeGardeur*, for defendants. By the court:

EUSTIS, C. J.   This appeal is taken from a judgment of the court of the Fifth District of New Orleans, by which the last will and testament of the late *Louis B. Macarty* was annulled, so far as relates to the plaintiff's interest in the succession; and they were adjudged to recover their hereditary portion, to wit, one-fourth of the effects thereof.

The ground on which the judgment appealed from is based, is a question of fact; and the conclusions of the district judge, after recapitulating the evidence and commenting on it with great care, are thus given:

"In this conflict of the testimony of the witnesses to the will, and failure of the recollection of the notary who received it, upon a point which is left doubtful by the phraseology of the will, a point which is held to be essential to the validity of a nuncupative will by authentic act, as we have seen above, it is my duty to pronounce as not proved, that the will in question was dictated by the testator to the notary, in the presence of the witnesses; and, for want of this formality, that the said will is invalid as regards the plaintiffs."

There were other demands against different parties, cumulated in the plaintiff's petition independant of the validity of the will, but the district judge confined his decision to this single point, reserving all other matters for further adjudication.

The nuncupative will of the testator, *L. B. Macarty*, was by public act. To give validity to this class of instruments, the law requires that it be received by a notary public, in the presence of three witnesses residing in the place where the will is made, or five non-resident witnesses. It must be dictated by the testator, and written by the notary as it is dictated. It must then be read to the testator, in the presence of the witnesses. Express mention must be made of the whole, observing that all these formalities must be fulfilled at one time, without interruption and without turning aside to other acts.

Our learned brother was of opinion, that, by the phraseology of the will, it was doubtful whether the will had been dictated by the testator, to the notary, in the presence of the witnesses.

The will is in the French language. The concluding part reads thus, in English : It is thus that this will has been dictated to me by *Jean Macarty*, and I, the said notary, have written the whole in my own hand, such as it has been dictated to me by the said testator, in the presence of the witnesses hereafter named and undersigned ; then having read, in an audible and high intelligible voice, and in presence of the witnesses, the present will to the said testator, he has declared, in the same presence, that he had heard and understood it well, and that he ratified it in its whole contents. Of which act, done and passed immediately, without interruption or diversion to other acts, at New Orleans, in the dwelling house of the testator, the day, month and year aforesaid, in presence of *Jean Baptist Dejan* the elder, *Pierre Frederic Thomas* and *Pierre Pascalis Labarre*, witnesses known and domiciliated in this city, &c.

The doubt of the district judge was, whether the words used import that the will was dictated in the presence of the witnesses, or was only written in their presence.

We are relieved from the task of grammatical criticism, which a solution of this doubt might otherwise have imposed on us, by the research of one of the counsel for the defendants. He has shown, from the decisions of courts in France, and the opinions of their first jurists, that in formulas like that made use of by the notary in this will, the words " in the presence of the witnesses hereafter named and undersigned," in this connection, would apply indiscriminately to the whole clause, to the dictation as well as the writing.

We adopt this conclusion the more readily, as it accords with the construction which, we think, the general sense of the whole sentence necessarily implies, under the rules of a sound legal interpretation. This construction is also concurrent with the statements in the initiatory clause of the will.

The will is then before us under the certificate of the notary, that it was dictated to him by the testator, in the presence of the witnesses, and written by the notary, as dictated, in their presence ; and this certificate is given by virtue of the authority vested in him by law as a public officer.

It is always with the greatest caution, that we interfere with the decision of a judge on a question of fact, when he had the advantage of hearing the examination of the witnesses testifying concerning it, and when the decision rests upon the degree of credit given to them by the judge. In the present case, no difficulty of this kind presents itself. In giving to the testimony of the witnesses the effect which the district judge assigned to it, the will must stand according to the rules of law. The judge considered the testimony of the witnesses conflicting. Be it so. We then have, in support of the will, the force and effect which the law gives to an authentic act, and the presumption which it recognizes in favor of the official acts of public officers, done by virtue of its authority. According to the ordinary rules of evidence, we think it must be considered, as proved, that the will was dictated by the testator to the notary, in the presence of the witnesses, as certified by him.

When we consider that the witnesses, whose testimony is held as conflicting, were examined as to the detail of facts which had transpired more than four years previous, a greater concurrence could not be expected, on matters resting on frail memory, from truthful and conscientious men. And when the testi-

mony of one of the witnesses, that of *Dejan*, the elder, is urged as impugning the accuracy of that of the others, and his respectability and intelligence are adduced in giving weight to his declarations, it would not be reasonable to leave out of the estimate one of the elements of his respectability—his age—the length of time in which his respectability has been acquired.

Under ordinary circumstances, there are few wills which would be sustained, if courts could set them aside, on testimony like that adduced in the present case.

The plaintiffs are heirs of a half-sister of the testator, *L. B. Macarty*, and were, at the time of his death, his heirs, by the right of their mother. *Mrs. Lalaurie* was the full sister of the testator, and co-heir with the plaintiffs. Her heirs are the principal defendants.

The testator having disposed of one-fourth of his estate in favor of a natural daughter, bequeathed the residue to his sister, *Mrs. Lalaurie*.

The plaintiffs claim from the heirs of *Mrs. Lalaurie*, one-fourth part of the three-fourths of the succession thus bequeathed to her, and inherited by them.

They contend, that under the 1474th article of the code, after the testator has exercised the privilege of disposing of one-fourth of his property in favor of his natural child, the rest of it must go to his relations in the regular order of succession, no disposition having been made of any portion of it, in favor of a public institution.

This construction which the counsel for the plaintiffs give to the article, would make the legitimate relations of the deceased his forced heirs, in the cases provided for. The very terms of this article, we think, exclude any such interpretation. We think the law on this subject has been settled, in the cases of *Prevost* v. *Martel*, 10 R. R. 516, and *Compton* v. *Prescott*, 12 *ib.* 62.

When the father disposes by will, in favor of his natural child, of the portion of his estate permitted him by law to dispose of, the only restraint which the law imposes on the rest of his property, is that the disposition of it be not in favor of any other persons than legitimate relations, or a public institution.

We therefore conclude, that the claim of the plaintiffs to one-fourth of three-fourths of the succession, under this article of the code, has no foundation in law.

There are several other matters remaining undecided in this cause, which has not been prepared with a view to their termination at this present time. It must therefore be remanded.

The judgment of the district court is therefore reversed. And on the claims of the plaintiffs, to annul and make void the last will and testament of *L. B. Macarty*, deceased, and to recover from the heirs of *Mrs. Lalaurie* one-fourth of three-fourths of the succession of the said *Macarty*, it is ordered by the court, that judgment be rendered for the defendants, with costs. And as to other matters at issue between the parties, it is ordered, that the will be remanded for further proceedings, the plaintiff paying the costs of this appeal.