## LAWSON'S HEIRS *v.* LAWSON'S EXECUTORS.

When the law requires certain forms to be observed in the *confection* of a will, the party who relies upon any want thereof, should expressly allege such informality. MERRICK C. J. and COLE. J.

The law does not require in nuncupation testaments by public act, that mention be made in the will that it was *dictated* by the testator to the notary in the *presence* of the witnesses. It is sufficient if express mention be made that it was dictated by the testator and written by the notary as dictated. MERRICK, C. J. and COLE, J.

It appears by Art. 1571 C. C. that express mention is required to be made, in nuncupation testaments by public act, of the facts that the will was dictated by the testator and written by the notary, as it was dictated—but no such *express mention* seems to be required of the fact that it was " written in the presence of the witnesses." By the next clause of Art. 1871, it appears that the presence of the witnesses when the will is *read* to the testator, must be expressly mentioned. It would seem to follow that the presence of the witnesses at the *dictation*, (which has been uniformly held to be necessary in a will of this form—*Langley* v *Langley*, 12. La. 114; *Mouton* v. *Cameau*, Ann. 566.) may be implied from the general tenor of the will. SPOFFORD, J.

Where it is fairly deducible from the tenor of the will that the witnesses were present during its dictation, the burthen of proof to establish the contrary is upon those who attack the validity of the will. Temporary absence of one of the witnesses, and for the purpose of getting a drink of water, in a passage opening upon the room where the Act was received by the notary, will not be sufficient to invalidate the will. SPOFFORD, J.

Temporary cessation during the confection of a will, occasionally induced by the weakness of the testator, does not constitute such an interruption as will vitiate the will.

APPEAL from the District Court of Bossier, *Egan, J.*

*Watkins & George* and *Hood & Knox,* for plaintiff and appellant.    *B. L Hodge* for defendant

SPOFFORD, J.   The heirs at law of *Andrew Lawson* seek to set aside his last will for informality.   The instrument purports to be a nuncupation will by public act.

1st. The first objection to its validity urged, in argument, although not very distinctly alleged in the pleadings, is that the will does not *expressly* state that it was dictated by the testator to the notary *in the presence of the subscribing witnesses.*   "The nuncupative testaments by public act must be received by a notary public, in the presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.

"The testament must be dictated by the testator, and written by the notary as it is dictated.

"It must then be read to the testator in presence of the witnesses.

"Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts."—C. C. 1571.

It thus appears that express mention is required to be made of the facts that the will was dictated by the testator, and written by the notary as it was dictated, but no such *express mention* seems to be required of the fact that it was "written in the presence of the witnesses."   By the next clause of the Art. 1571, it appears that the presence of the witnesses when the will is *read* to the testator must be expressly mentioned.   It would seem to follow that the presence of the witnesses at the dictation (which has uniformly been held to be necessary in a will of this form, *Langley* v. *Langley,* 12 L. 114. *Mouton* v. *Cameau,* 5. Ann. 566.) may be implied from the general tenor of the instrument.   And Paillet, commenting upon the Art. 972 of the Napoleon Code, analogous to our Art. 1571, remarks: Il n'est pas requis, à peine de nullité, qu'il soit fait mention expresse de l'écriture du testament, par le notaire, *en présence des témoins.*   La mention exigée par l'article 972 du code civil ne doit s'appliquer qu'aux formalités prescrites par cet article même."   The inference that the witnesses were present, like an express mention, is liable to be rebutted by parol evidence.   In either case, if it be proved that any of the necessary witnesses were not present *at the dictation,* the testament will be set aside.

It is a reasonable inference from various clauses and expressions in the testament before us, that the witnesses were present when the will was dictated. It is expressly stated that they were present when it was *read* to the testator. The clauses from which it may be implied that the witnesses were present at the dictation, are as follows :   "In testimony whereof, I haved caused the said *Andrew Lawson* to acknowledge and sign this as his last will and testament after reading the same in an audible voice in his hearing in the presence of the subscribing witnesses, whom I have caused to sign as such, I the said notary having written this Act in my own proper hand, at and by the dictation of the said *Andrew Lawson,* without turning aside to other business. Thus done and signed in presence of the subscribing witnesses all of lawful age residing " &c., &c.

There was no clearer statement of the witnesses being present at the dictation of *Macarty's* will, which was held in 7. Ann. 485, to announce that fact by legal implication from the expressions used, although it was not distinctly and expressly stated in terms. The presence of the witnesses at the dictation, was also inferred from the general expressions of the will in *Pégerot* v. *Meuillon*, 3 M. 114, under a textual provision of the old code similar to that contained in the Art. 1571 of the new.

2. In the next place it is contended that the proof is sufficient to show that the attesting witnesses were not present all the time during the dictation of the will. The burden of proof was upon the plaintiffs, as they alleged and assumed to establish, in opposition to the influences fairly deducible from the language of the will, that one or more of the witnesses was absent during a part of the dictation. The witnesses upon whom the plaintiffs rely, defeat the allegations of their petition. *Boon*, on cross-examination, says, "he does not think that any part of the will was written *or dictated* during his absence from the room." His absence was but temporary, and for the purpose of getting a drink of water in a passage open upon the room where the Act was received by the notary. *Homitu*, on cross-examination, says, "the will was entirely dictated by said *Lawson* to *Robert J. Looney*, and written by said *Looney* as dictated, and read aloud by said *Looney* to said *Lawson* and the witnesses, and signed by said *Lawson* and said witnesses, *all in my presence*, to the best of my recollection."

The bill of exceptions reserved by the plaintiffs to their answer upon the cross-examination, was untenable, because the matters elicited upon the cross-examination were pertinent to the examination in chief. The plaintiffs sought to impeach and contradict the public Act; the defendant merely sought to sustain it against this attack, and to explain or rebut the evidence offered by plaintiffs.

3d. The appellants again contend that there was an interruption and a turning aside to other Acts during the confection of the will. Such a temporary cessation as was occasionally induced by the weakness of the testator, does not constitute a legal interruption which would vitiate the will. *Chardon's Heirs* v. *Bonque*, 9 L. R. 470. And as to the conditional bequest in favor of *Harrison*, erroneously styled a codicil, although the attention of the testator was called to the subject by an interrogatory put to him after the main dispositions of the will were made, we are unable to say that it was foreign to the legitimate business in hand.

4th. It is also said that the will is defective for the uncertainty of the objects bequeathed ; in other words, the legacies are said to be imperfectly described. So far as this record informs us, we think there is a sufficiently accurate description of the property donated by the will, to enable the Courts to indentify it. *Id certum est quod certum reddi protest.*

5th. The formal objections to the will being overruled, one or two incidental questions are presented by the argument of counsel in submitting the cause, and by the appelee's prayer for an amendment of the judgment. We consider this prayer to amend properly before us, under the facts of the case as disclosed by the document on file. The right to file an answer with the brief of appelee seems to have been expressly reserved when the cause was submitted.

In the answer of the appellee there is a prayer that the judgment be so amended as to allow him one-half of the property depending upon the com-

munity between the deceased *Lawson* and his wife, herein represented by the appelee as his universal legatee. No such amendment is necessary. Upon the the death of *Andrew Lawson*, one-half of the community property vested in his surviving widow, subject to the payment of her half of the community debts. This interest does not purport to be bequeathed by the will and cannot be affected by it. It would be superfluous to reserve to the defendant what has never been claimed by the plaintiffs.

The apellee further prays that the judgment be so amended as to decree that the debts due by the succession of *Lawson* be paid out of the property acquired by said *Lawson* after the 20th July, 1850, the date of the will, it appearing that the testator survived more than three years after that date, and accumulated further property.

We concur with the District Jugde in the opinion that the will speaks not from the death of *Lawson*, but from its date; it disposes only of property owned by the testator when it was written, not of subsequent acquisitions. C· C. 1713, 1714, 1715.

As to property acquired after the date of the will, or not embraced in the terms of the will, the deceased died intestate, and his heirs at law inherit such portions of his estate, after the debts are discharged according to law.    We are of opinion that the testator's wife, *Mary Elizabeth Harail Taliaferro*, was a particular and not an universal legatee, nor a legatee under universal title. C. C. 1599, 1604, 1618. "Toute disposition qui ne rentre pas dans les définitions ci-dessus nommées des legs universels et à titre universel, constitue un legs particulaier. Ansi celui qui lègue tous ses immeubles, mais comme biens determinés, et non en masse; celui qui lègue même en masse et dans leur assemblée, toutes ses maisons, tous ses bois, *tous ses immeubles des colonies ou de tel département* et qui exclut ainsi ses autres immeubles, ne fait que les legs particuliers." 4 Marcadé No. 119. C. N. 1010. And "the legatee by a particular title shall not be liable to the debts of the succession, except the reduction of the legacies as is before provided, and except the action of the mortgage of the creditors." C. C. 1635.

As already intimated, the community debts must be paid out of the community property, and the share of *Mrs. Lawson* is equally burthened with that of *Lawson's* succession, for the discharge of these debts. If *Lawson* left any separate debts, they must be acquitted out of his share of the acquisitions, made after the date of the will, or out of his property not embraced by the will, rather than out of the property bequeathed by him to the particular legatees. Of course the mortgage creditors, if any, are to be paid by preference out of the property hypothecated to them.

It is therefore, ordered that the judgment of the District Court be so amended as to order the community debts to be paid by preference out of the property heretofore held in common between the deceased *Andrew Lawson* and his wife *Mary H. L. Talliaferro*, in equal proportions out of the share of each spouse; and that, after the payment of such community debts out of the community estate, any separate debts due by the said *Andrew Lawson*, if such there be, shall be acquitted out of his interest in property acquired subsequent to the date of the will, or not embraced within its terms, before going upon any property specially bequeathed to his legatees; and it is further ordered and decreed that the judgment appealed from be, in all other respects, affirmed, the costs of this appeal to be borne by the plaintiffs and appellant.

MERRICK, C. J. I think we can only consider those nullities which are expressly alleged. If the law requires certain forms to be observed in the confection of a will, the party who relies upon any want thereof should expressly allege such informality.

In this case it is not objected that the will was not *received* in the presence of the witnesses. It is merely alleged that it does not "on the face of the will show that it was dictated *in the presence or hearing of the witnesses* by the testator to the notary."

The law only requires that express mention should be made of the following formalities, viz:

1st. That the will was received in the presence of these witnesses, residing in the place, &c.

2d. That it was dictated by the testator and written by the notary as it was dictated, and

3d. That it was then read to the testator in the presence of the witnesses. As no objection is made to the will on the first ground, it must be considered as waived.

If then the witnesses were present when the will was received, they must have been there when it was dictated, for the dictation is a part of the act of receiving the will. But it is objected that it is not mentioned that it was *dictated in the presence of the witnesses.* The law does not require it to be so mentioned in the will. If it be conceded that the will was received in the presence of the witnesses (and it is not objected to, that it was not so received) then under the law it is sufficient on this point if express mention be made that it was dictated by the testator, and written by the notary as directed.

The District Judge was of the opinion that it sufficiently appeared that the witnesses were present at the dictation of the will, among other things from the concluding clause, "thus done and signed in the presence of the subscribing witnesses" &c., and I am not prepared to say, under plaintiffs, allegations, that he erred in his conclusions. I therefore concur in the decree in this case.

COLE, J. Concured in this opinion.