linquished its agency to sell the plaintiff's phonographs.

For the reasons assigned, the rule nisi herein issued is discharged, and the judgment of the Court of Appeal is affirmed, at relator's cost.

---

(109 So. 44)

No. 27496.

**DUHON et al. v. DUHON et al.**

(May 31, 1926.)

*(Syllabus by Editorial Staff.)*

1. Wills ⟨key⟩148—Statement of notary in nuncupative will that, "said testator having declared not to know how to write or sign his name," held a compliance with statutes as to statement required when testator knows not how to sign his name (Rev. Civ. Code, arts. 1578, 1579).

Statement by notary in nuncupative will made by public act in accordance with Rev. Civ. Code, art. 1578, that, "said testator having declared to me and to said witnesses not to know how to write or sign his name," *held* to comply with article 1579 as to statement required when testator knows not how to sign his name.

2. Wills ⟨key⟩148—Statement of notary in nuncupative will that it was written in presence of witnesses and that testator persisted in will after its reading, "all being done at one time without interruption and without turning aside to other acts," held sufficient compliance with statute (Rev. Civ. Code, art. 1578).

Statement by notary in nuncupative will made by public act that will was written in presence of witnesses as dictated by testator, who declared he understood will after reading and persisted in it, "all being done at one time, without interruption and without turning aside to other acts," *held* sufficient compliance with Rev. Civ. Code, art. 1578, requiring notary to declare that reading of will was done in presence of witnesses.

Appeal from Fourteenth Judicial District Court, Parish of Calcasieu; Jerry Cline, Judge.

Suit by John Duhon and others against Samuel Duhon and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Thomas Arthur Edwards, of Lake Charles, for appellants.

Williams & Williams, of Lake Charles, for appellees.

O'NIELL, C. J. This is a suit to annul a nuncupative will made by public act. The plaintiffs contend that the will is null for two reasons: First, that the notary did not state in the instrument that his reading of the will to the testator, after it was written, was done in the presence of the witnesses; and, second, that, notwithstanding the will was not signed by the testator, there is no mention in the instrument that the testator declared that he knew not how or was not able to sign, and no statement of the cause that hindered him from signing. The defense is: First, that the instrument does contain the recitals mentioned; and, second, that if the recitals in that respect are not as explicit as they ought to be, the action to annul the will for such informality is barred by the prescription of five years, according to article 3542 of the Civil Code, which declares that actions for the nullity of testaments are barred by the prescription of five years. The district court held that the action was barred by the prescription of five years, and rejected the plaintiffs' demand. They have appealed from the judgment.

A nuncupative testatment by public act, after being dictated by the testator and written by the notary as it is dictated, must then be read to the testator in the presence of the witnesses, and mention must be made in the instrument that the formalities were all observed and fulfilled at one time and without interruption or turning aside to any other act. Rev. Civ. Code, art. 1578. The instrument must be signed by the testator if he can sign his name. If he declares that he knows

not how or is not able to sign, express mention of his declaration and of the cause that hinders him from signing must be made in the act. Rev. Civ. Code, art. 1579.

[1] This will was written in the French language by a clerk of court, ex officio notary public. The only bequest in the will is in favor of the testator's niece, who is named as the universal legatee and executrix, with seizin of the estate and without the necessity of giving bond. Immediately· after the paragraph in which she is so named and appointed appear the clauses in contest; a literal translation of which is:

"It was thus that the said testament or act of last will of Mr. Clairville Granger was dictated to me by the testator in the presence of the said witnesses, and that I wrote it altogether with my own hand, in the presence of said witnesses, as it was dictated to me by the testator, and there, after the reading of the said testament was done by me, clerk and notary, to the testator, he declared that he understood it well and that he persisted in it, all at one time, without interruption and without turning aside to other acts.

"This act was done and passed at the residence of Mr. Clairville Granger, in the parish of Calcasieu, in the presence of Messrs. Miguel J. Rosteet, Joseph C. LeBleu, Arsene P. Pujo and Joseph W. Rosteet, witnesses aforesaid, who sign with me, notary, and the testator having declared to me and to said witnesses not to know how to write or sign his name made his ordinary mark in my presence and that of the said undersigned witnesses, the same day, month and year mentioned above."

The statement of the notary, "and the said testator having declared to me and to said witnesses not to know how to write or sign his name," or, as it appears in the text, "et le testateur ayant declare a moi et aux dits temoins ne savoir ecrire ni signer son nom," was just such a statement as is required by article 1579 of the Civil Code when the testator knows not how to sign his name. There is, therefore, nothing in the plaintiffs' charge of nullity or informality in that respect.

[2] With regard to the other charge of nullity, it is true that the notary did not, in terms, declare that his reading of the will to the testator was done in the presence of the witnesses, but, in the context of the paragraph, in which the reading of the will to the testator is mentioned, is a declaration, which we consider plain enough, that the witnesses were yet present when the will was read by the notary to the testator. The declaration is that the will was written by the notary, in the presence of the witnesses, as it was dictated to the notary by the testator, and that, there, after the reading of the testament by the notary to the testator, he declared that he understood it well and persisted in it, all being done at one time, without interruption and without turning aside to other acts. Those expressions, in ordinary parlance, mean that all that was done by the notary in the making of· the will was done in the presence of the witnesses as well as of the testator.

In Pizerot v. Meuillon's Heirs, 3 Mart. (O. S.) 97, the notary had failed to declare, in terms, that the dictating of the will was done in the presence of the witnesses, but the court found that the context disclosed the fact plain enough. It was said (page 114):

"It is said by the appellants, that it does not appear, from the notary's certificate of the execution of the will, that it was dictated by the testatrix, in the presence of the witnesses. * * * But, independently of this serious objection, if we attend to the certificate of the notary, we shall find that all the essential requisites were complied with: He certifies that the testatrix declared and dictated the will to him, and that it was made and signed by the testatrix and the witnesses, after it was read; from which it may fairly be inferred that the four witnesses and the notary were all present during the dictation and execution."

In Seghers v. Antheman, 1 Mart. (N. S.) 73, the will did not contain the declaration, in so many words, that the will was read to the testatrix, but the court found that the declarations which the instrument ·did contain showed that it was read to the testatrix.

Mr. Justice Porter, for the court (page 80), said:

"It is not stated here, that the will was read over to the testatrix, but it is declared, that after the reading, she approved it, in presence of witnesses. It has occurred to us, as worthy of consideration, whether it necessarily resulted from the expressions, that the will was read to her, and we think that it does. To give them any other construction, would be to render the whole clause absurd; for, if it was not read to her, why the statement that the reading preceded the approbation?"

The doctrine is stated in the syllabus of the decision thus:

"If the proof of a will being read over to the testator in the presence of witnesses is furnished by the testament itself, it is immaterial in what words that proof is furnished."

Again, in Forstall v. Forstall, 3 Mart. (N. S.) 367, 368, the court said:

"We think if it result from an examination of the whole instrument, that the will was read to the testator in the presence of the witnesses, that it is immaterial in what words that idea is conveyed."

In Rongger v. Kissinger, 26 La. Ann. 338, the notary had failed to declare, in precise terms, that the dictation of the will was done in presence of the witnesses, but the court found that the context made it plain enough that the dictation, as well as the writing of the will, was done in the presence of the witnesses. The court said:

"There are no sacramental words prescribed by law. If words are used which taken all together show that the notary did all that the law makes essential, the will is good as to form, although the notary may be confused in his manner of expressing himself. The object of the law is to have it appear from the will itself that the prescribed formalities have been observed. In this instance we think a fair and legitimate construction of what the notary has stated, makes it appear that the will was received by him in presence of three competent witnesses; that it was dictated by the testator and written by the notary, while it was being dictated, in presence of the witnesses, and read to the testator in their presence, and that all was done at one time, without interruption and turning aside to other acts, thus meeting the objections of plaintiffs. The statement that the witnesses were present and in hearing of the testator all the time in which the will was written, taken in connection with the other statements that it was written according to his (the testator's) dictation, and that all was done without interruption at one time, must mean that the dictation, as well as the writing, was done in the presence of the witnesses."

In the Succession of Marqueze, 50 La. Ann. 68, 23 So. 106, the court, quoting the French commentators on article 978 of the Code Napoleon, corresponding with article 1578 of the Louisiana Code, said:

"The lawmaker, in other words, has exacted no sacramental words of the notary, but is satisfied if equivalent language is employed. While exacting express mention of compliance with the formalities requisite for wills of this form [meaning nuncupative wills by public act], the commentators all concur in the sufficiency of words equivalent to those in the Code."

The decision in the Succession of Sparks, 12 Rob. 35, 37, affirmed in Graves v. Graves, 10 La. Ann. 212, in Devall v. Palms, 20 La. Ann. 202, and in Succession of Carroll, 28 La. Ann. 388, was not a departure from the rule established in the other cases that we have cited. In the Succession of Sparks and like cases, the court found that it could not "be even inferred" from the will in contest that the formality referred to, e. g., the reading of the will to the testator, was done in the presence of the witnesses.

If we deemed this will in contest defective for want of a clearer expression that the reading of it by the notary to the testator was done in the presence of the witnesses, we would have no doubt that the defect was cured by the prescription of five years, under article 3542 of the Civil Code, declaring that actions for the nullity of testaments are barred by the prescription of five years. We prefer, however, to rest our ruling upon the jurisprudence which we have cited, maintaining that, without regard for the plea

of prescription, this will was not invalid in the matter of form.

The judgment is affirmed, at appellants' cost.