### FAKOURI v. CADAIS et al.
No. 10957.

Circuit Court of Appeals, Fifth Circuit.
May 16, 1945.

322

For former opinion, see 147 F.2d 667.

Edward Dubuisson, of Opelousas, La., and Charles E. Dunbar, Jr. and Charles A. O'Niell, Jr., both of New Orleans, La., for appellant.

Wade O. Martin, Jr. and George M. Wallace, both of Baton Rouge, La., and John W. Lewis and Seth Lewis, both of Opelousas, La., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

In our original opinion herein, reported in 147 F.2d 667, 675, we analyzed the applicable jurisprudence of Louisiana and reached the conclusion that the nuncupative will by public act was null and void because it did not "state that it was dictated to the notary and by him written down as dictated in the presence of the witnesses."

By petition for rehearing appellant strongly urges that we failed properly to apply the law of Louisiana. It is said that we did not give effect to that line of judicial decisions culminating in Duhon v. Duhon, 161 La. 499, 109 So. 44, which hold that, if the expressions embraced within the four corners of the will contain language plainly indicating that all essential requisites were complied with, the will is in valid form. At the outset we wish to make clear that our failure to refer to these authorities in our prior disposition of the case was not occasioned either by oversight or by any misapprehension of the tenor of those decisions. Rather it was because we were then, and are now, of the considered opinion that these authorities are in harmony with those heretofore referred to, but are not so closely analogous in point of fact as are those upon which our prior opinion was rested. In deference to the petition for rehearing we shall discuss anew these principles.

Appellant's basic contention here was urged on the original appeal. Its substance is that the will [1] expressly mentioned that the testator announced his intent to make

---

[1] "State of Louisiana, Parish of St. Landry: Before me, William Alexander Robertson, a Notary Public duly commissioned, qualified and sworn in and for the State and parish above written, and in the presence of J. Austin Perkins, Odon Andrus and Alex Robertson, Jr., three competent witnesses above the age of sixteen years, all residents of above parish and State, personally came and appeared Elias Mansaur, a resident of Opelousas, above parish and State to me and said witnesses well known, who declared to me, notary, in the presence and hearing of said witnesses that he desired to make his last will and testament, and that he wanted me, notary, to write down said testament at his dictation, and he, said Elias Mansaur, dictated to me, notary, this his last will and testament, and I, notary, received same from his dictation and wrote same down as it was dictated to me, in words as follows, to-wit:

"'This is my last will. I hereby revoke my previous will.

"'I give and leave all of my property real and personal to my cousin John Fakouri.'

"This last will and testament of Elias Mansaur was dictated to me by said testator in English, and was reduced to writing by me, Notary, as dictated by said testator.

"I, Notary, then read above will to said testator, in the presence and hearing of said witnesses and said testator declared that he was satisfied therewith and that it correctly expressed his intended dispositions.

his will before all necessary parties, then recited that it was read to the testator by the notary in the presence of the witnesses and received the approval of the testator, and finally declared that the whole will was dictated, received, transcribed, and read at one time and one place without turning aside to any other act and without interruption or diversion; and that these recitations, considered together, imply that the dictation and writing of the will likewise took place in the presence of the witnesses.

█ It is true that in the cases of Pizerot v. Meuillon's Heirs, 3 Mart., O.S., La., 97, and Lawson's Heirs v. Lawson's Ex'rs, 12 La.Ann. 603, the court upheld the will considered in each because it was "fairly inferred" from the will itself that all formal requisites were satisfied. But in each of them it was plain that no other reasonable inference could be drawn. Indeed, as all parties concede, the will itself must make full proof, and if it only gives rise to two different and conflicting but equally reasonable inferences, it manifestly proves neither.

Unless these decisions are so construed, they are plainly in conflict with the rule applied in Seghers v. Aritheman, 1 Mart., N.S., La., 73, Nelder v. Macarty's Ex'rs, 7 La.Ann. 484, Succession of Wilkin, 21 La. Ann. 115, Rongger v. Kissinger, 26 La.Ann. 338, Conner v. Brasher, 25 La.Ann. 663, Succession of Dorries, 37 La.Ann. 833, Duhon v. Duhon, 161 La. 499, 109 So. 44, Succession of Wilson, 177 La. 119, 148 So. 1, and Succession of Feitel, 187 La. 596, 175 So. 72, 75. This rule is best summarized in the language of Mr. Justice Fenner in Succession of Vidal, 44 La.Ann. 41, 10 So. 414, 416, in these words: "* * * Our Code requires that the will by public nuncupative act shall be received by the notary, dictated by the testator, written down by the notary, and read to the testator, all in presence of the witnesses; and that 'express mention' must be made in the will itself that the foregoing re-

quirements have been complied with. No proof of the most scrupulous fulfillment of every formality would suffice without this 'express mention.' No particular form of words is required. They must be such as expressly declare in substance that the foregoing requirements were fulfilled. Implication cannot be resorted to, unless at least it be an implication necessarily involved in the meaning of the express words used."

█ None of these later cases that followed the ruling of the Vidal case contained any language indicative of an intention to overrule the earlier decisions in the Pizerot and Lawson cases. It is inconceivable that such a fact could, in case after case, be attributable to oversight, particularly in view of the fact that one judge alone, in two of the cases, advanced the view that some decisions were inconsistent with others. The only rational inference from this course of conduct is that all save one of the members of the Supreme Court of Louisiana entertain the studied opinion that there is no conflict in the authorities. Even if we did not concur in this view, as we do, we would nevertheless be obliged to defer to it and to construe the decisions harmoniously with each other.

█ The rule of law evolved from the contributions of each case, and the only rule consistent with all the decisions, is that the language of the will itself must either expressly declare that each statutory requirement was fulfilled, or such must be the necessary implication of the express words used. This is the focal point of divergence between counsel for appellant and this court, for as we view this will it is doubtful that the express language of the instrument even permits the inference that the dictation and writing of the will took place in the presence of the witnesses; certainly its language does not necessitate such an inference.

In our former opinion, in discussing the will, we said [147 F.2d 673]: "* * *

---

"The whole of this was dictated, received, transcribed and read and signed at one time at the residence of John Fakouri on Main Street in Opelousas, La., between the hours of four and five o'clock in the afternoon of this the twenty-first day of July, A. D. Nineteen Hundred and Forty, all without turning aside to any other act and without any interruption or diversion. Said testator declared to me notary that on account of illness he was unable to write or sign, and signed by his ordinary mark. Error in writing Fakouri for Mansaur at close of act corrected at time of signing (signed) Elias (his X mark) Mansaur, Witnesses: J. Austin Perkins, Odon Andrus and Alex Robertson, Jr., Wm. Alex Robertson, Notary Public."

The will itself refers to certain things done in the presence and hearing of the witnesses: the first, that the testator stated in the presence and hearing of the witnesses that he desired to make his last will and testament, and wanted the Notary to write the testament down at his dictation; the second, that the will when written was read to the testator in the presence and hearing of the witnesses. Specific reference being made to things done in the presence and hearing of the witnesses may indicate that things done without such reference were done out of the presence and hearing of the witnesses, otherwise the presence of the witnesses would have been mentioned."

That this was not idle reasoning is demonstrated in the first will. In that will (salient portions of the two wills are set forth for comparison in the footnote),[2] the same notary stated that the witnesses were present at the dictation, when the dictation was reduced to writing by him, when the will was read by him to the testator; and, to show presence of testator, notary, and witnesses at each and every step in the proceedings, the notary, following his statement that the dictation, et cetera, were all done at one time and without turning aside to other acts and without interruption or diversion of any kind, closed the will with the words, "and without said testator, either of the witnesses, or me, notary, leaving said room at any time."

We come then to the inquiry: Does the statement that the witnesses were present when the will was read, coupled with the declaration that there was no turning aside to other acts, nor any interruption or diversion, necessarily imply that they were present when it was dictated to the notary and by him reduced to writing? The witnesses played no active part in the dictation or in the transcription of the will. The recitation in the will before us, stated without supporting facts, is but a conclusion of the notary who wrote the will; it is nothing more than the equivalent of saying that, in the opinion of the notary, there was no interruption or diversion or turning aside.

It may be that every notary entertains a different view of what constitutes an interruption or diversion, and of whether or not the silent departure and temporary absence of a witness during the dictation and transcription of the will would necessarily interrupt or divert that business. This notary at least implied that, in his opinion, leaving or entering the room was not necessarily an interruption or diversion or turning aside to other acts. In the first will, after stating that the whole of the

---

2          *First Will*

"This last will and testament of Elias Mansaur was dictated by him to me, Notary, *in the presence and hearing of the above named witnesses*, in the English language, which said testator *and witnesses* declared they well understood and was reduced to writing by me, Notary, as dictated by said testator.

"I, Notary, then read above will to said testator *in the presence and hearing of said witnesses*, and said testator declared to me, notary, that he was satisfied with said will, and that it correctly expressed his intended dispositions.

"The whole of this will was dictated, received, transcribed, read and signed, in one continuous session and at one time. * * * the whole being done without turning aside to any other act and without any interruption or diversion of any kind, *and without said testator, either of said witnesses or me, Notary, leaving said room at any time.*"

*Will Under Consideration*

"And he, said Elias Mansaur, dictated to me, notary, this his last will and testament, and I, notary, received same from his dictation and wrote same down as it was dictated to me, in words as follows, to-wit:

* * * * *

"This last will and testament of Elias Mansaur was dictated to me by said testator in English, and was reduced to writing by me, Notary, as dictated by said testator.

"I, notary, then read above will to said testator, *in the presence and hearing of said witnesses* and said testator declared that he was satisfied therewith and that it correctly expressed his intended dispositions.

"The whole of this was dictated, received, transcribed and read and signed at one time, * * * all without turning aside to any other act and without any interruption or diversion."

will was dictated, received, transcribed, read, and signed at one time, he added: "the whole being done without turning aside to any other act and without any interruption or diversion of any kind, and without said testator, either of said witnesses, or me, notary, leaving said room at any time." The addition of the last clause implies that the acts mentioned therein were not included in the two clauses which preceded.

A comparison of this instrument with the one copied at length in the decision in the case of Conner v. Brasher, 25 La.Ann. 663, will establish an almost complete identity in every feature having the slightest bearing on the question before us. In that case the will was pronounced void because it contained no express mention that the will was dictated by the testator and written by the notary as dictated in the presence of the witnesses. In that case in the preamble of the will the notary recited that the testator came with "three witnesses hereinafter named and hereto subscribing," and "requested of me, notary, to receive his last will and testament as he would dictate the same to me," and the testament closes, "Thus, I, notary, have written the foregoing will without any interruption or turning aside to other acts, as the said testator dictated the same to me, and having read the same to him in the presence of the witnesses, in a loud and intelligible voice, he, said testator, declared that he heard and understood the same perfectly well and persisted therein."

In the Conner case the only express words in the will showing the presence of the witnesses had to do with the request of the notary made by the testator and with the reading of the will by the notary to the testator. The statement that the will was written without interruption or turning aside to other acts obviously was not considered by the court a sufficient declaration the necessary import of which was that the witnesses were present when the will was dictated and reduced to writing.

Under Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, we must apply local law as interpreted by the local courts. After reviewing anew the decisions dealing with the applicable local law, we conclude, as we did on original hearing and as did the court below, that the will is void for fail-ure to state in express language or in equivalent terms that it was dictated to the notary and by him written down as dictated in the presence of the witnesses.

The application for rehearing is denied.