O’NIELL, Chief Justice.
 

 Philip A. Wengert died on the 24th of May, 1932, leaving a will in which he bequeathed to his widow, Mary Dirr Wengert, two houses and lots worth $3,000, and two savings accounts in New Orleans banks, amounting to $770.68, and appointed his son, Emile' Wengert, testamentary executor. The estate was valued at $9,051.83. Emile Wengert and his brother, Alexander, who is an interdict, are the only heirs of Philip A. Wengert. They were born of his marriage to Theresa Dupuy, who died on the 18th óf November, 1920.' He married Mary Dirr on the 13th of May, 1924.
 

 Emile Wengert had the will of his father probated, was confirmed and qualified as executor, and had an inventory of the property made. Immediately afterwards the widow demanded possession of her legacies; and, the demand being refused, she sued the executor and the interdict for- possession of her legacies. The executor and the curator for the interdict pleaded that the succession of their father owed them $4,660.50, which they alleged had to be paid before the widow could feceive her legacies. The claim of $4,660.50 is made up of three items, viz.: (1) $500 for half of 1,000 sha'res of homestead stock which belonged to the first matrimonial community, and which Philip A. Wengert sold after his first wife died; (2) $270 for dividends alleged to have been collected by Philip A. Wengert on the homestead stock after his first wife died; and (3) $3,890.50 for half of the rents alleged to have been collected by Philip A. Wengert (including the alleged rental value of the house he lived in) from the property belonging to the first matrimonial community, from the date of the second marriage, May 13, 1924, to the date of his death. The widow, Mary' Dirr Wengert, contended that the succession of her husband did not have to account for the rents of the property of the first community, or to account for the dividends on the homestead stock, because in the will of the first Mrs. Wengert she bequeathed to her husband the usufruct of her estate, and bequeathed to her two sons the ownership of the property subject to the usufruct. The will of the first Mrs. Wengert, which was a nuncupative will by public act, dated the 3d of August, 1920, was not probated during the lifetime of her husband; but the widow, Mary Dirr Wengert, had the will probated immediately after the defendants answered this suit, to support her claim that her husband was entitled to the usufruct of the estate of his first wife, and hence did not owe rents derived from the property. The judge decided that the will of the first Mrs. Wengert, bequeathing the usufruct of her estate to her husband, had no effect because it was not probated during the lifetime of the husband. Hence the judge decided that, before Mrs. Mary Dirr Wengert could receive the legacies bequeathed to her by her husband, his estate bad to pay to Emile and Alexander Wengert half of the rents of
 
 *488
 
 the property of the first community, which the judge fixed at the net amount of $2,234.04, hnd half of the value of the 1,000 shares of homestead stock, $500, and half of the dividends collected after the death of the first Mrs. Wengert, $57, with legal interest on the $500 from the date of the sale of the homestead stock, February 1, 1926, to the date of the death of Philip A. Wengert.. The widow has appealed from the decision.
 

 The only question in the case is wheth'er the will of the first Mrs. Wengert, bequeathing to her husband the usufruct of her half interest in the community property, never went into effect because it was not probated during his lifetime, or whether the probating of the will after his death gave it effect from the date of the death of the testatrix. The defendants rely upon article 1644 of the Civil Code, which declares that a will cannot have effect unless it has been probated ; and they rely upon the decision in Marcos v. Barcas, 5 La. Ann. 205, and in Heirs of Landry v. Heirs of Duaron, 5 La. Ann. 612, repeating the article of the Code. In each of the cases cited, the will which was said to have had no effect was never probated; hence it was not decided in either case, and in fact could not have been decided in either case, that a transfer of title by will takes effect only from the date of the probate of the will. In Marcos v. Barcas it was intimated that the will which had no effect because it had not been probated might yet become effective if probated, viz., “The decision which we are about to make must, of course, be understood as not affecting the eventual rights of the slave Louis, if any he has, under the will of Desiree Hudson.” And in Heirs of Landry v. Heirs of Duaron, the statement that the will had no effect because it had not been probated Was not the basis for the decision, because the court found that the will was null for want of, legal form, and, having so found, the author of the opinion merely added: “We are satisfied from the evidence in the record, that the will was null; but if it had been in due form, its non-execution during the lifetime of Ursule Duaron [to whom the testator bequeathed the usufruct of his estate] would be fatal to the pretensions of her heirs.” In Johnson v. Rannels, 6 Mart. (N. S.) 621, it was held that it was not necessary for a will made in another state to be registered and ordered executed in Louisiana, or probated according to the laws of this state, where the' will was offered merely as evidence of the title of the legatee, against another party claiming title. In State ex rel. Remendo v. Judge of Second District Court, 17 La. Ann. 189, the judge was ordered to probate a will even though the succession of the testator had been opened and administered and the property of the succession had been delivered to the legal heir by a judicial decree. In Brewer v. Yazoo & M. V. Railroad Co., 128 La. 544, 54 So. 987, 990, it was held that the provisions of article 1644 of the Civil Code, requiring a will to be probated in order to have effect, and of article 168S requiring a will made in another state to be registered and ordered executed here in order to have effect in this state, “.are intended to guard against the carrying into effect of testamentary dispositions which may be at variance with the law or public policy of the state, and against the payment of particular legacies, to the prejudice of forced herns and creditors, and they do not operate to destroy the effect of a- particular
 
 *490
 
 legacy, otherwise valid, or to deprive the particular legatee oí the right to the thing bequeathed to him from the day of the testator’s death,” etc. In Bissell v. Bodcaw Lumber Co., 134 La. 839, 64 So. 792, 793, it was held that a will made in New York, but not registered or ordered executed in Louisiana, as required by article 1688 of the Civil Code, was a sufficient muniment of title to protect the defendant holding title from the legatee against the claim of the heir of the testator. The court quoted from Johnson v. Rannels, 6 Mart. (N. S.) 622, with approval, and said: “In Marcos v. Barcas, 5 La. Ann. 265, and in Heirs of Landry v. Heirs of Duaron, 5 La. Ann. 612, the wills were never probated.”
 

 Our conclusion, therefore, is that the widow of Philip A. Wengert should not be deprived of the legacies which he bequeathed to her, by his neglect to probate the will of his first wife during his lifetime. The argument on behalf of his heirs is that, by failing or neglecting to have the will of his first wife probated, he manifested an intention to renounce or disclaim the usufruct which his wife bequeathed to him, and which would have continued to the end of his life, and to accept the usufruct which the law gave him, but which, according to article 916 of the Civil Code, ended when he married again. There is no reason to presume that Philip A. Wengert had any such intention. On the contrary, no one would intentionally, and without any cause or consideration whatever, abandon or put an end to a valuable right, such as a usufruct for life. It is true that Philip A. Wengert had a copy of his wife’s will in his possession; but it is also shown that his son Emile knew of the will, and tacitly consented to his father’s remaining in possession of the community property, as owner of one half of it and usufructuary of the other half. We do not mean that the conduct of Emile Wengert in that respect should have the effect of an estoppel ; but it furnishes evidence that the fathers remaining in possession of the community property, without having his wife’s will probated, was not intended to be an abandonment of the usufruct which was given to him by the will, and which perhaps he wa.s advised was the same as the usufruct which .the law gave him, of his wife’s share of the .community property. At any rate, our opinion is that the probate of the will, even after the death of Philip A. Wengert, furnished evidence of his title tq the usufruct which, he had enjoyed to the end of his life.
 

 Adverting to the item of $560, the evidence leaves no doubt that Philip A. Wengert disposed of 1,000 shares of homestead stock, by withdrawal or sale, and received $1,000 for it, after the death of his first wife, and that the stock belonged tq the first matrimonial community. Hence he owes his sons, as the heirs of his first wife, $500 for their half interest in the homestead stock. That, however, is a matter of no importance if the estate of Philip A. Wengert is, as the record now shows it is, thoroughly solvent, and of such value that the legacies bequeathed to his widow are within, the disposable portion 0f his estate. The item of $57, for half of the dividends collected on the homestead stock by Philip A. Wengert after the death of his first wife, need not be paid by his estate to her heirs if the dividends were merely the revenues of the property of which he had the usufruct. But that also is a matter of no impor
 
 *492
 
 tance if, as the record now shows, the estate of Philip A. Wengert is solvent and of such value that 'the legacies bequeathed to his widow, being the. only donations he made, are within the disposable portion of his estate. We are not called upon now to decide, and do not decide, whether the legacies which Philip A. Wengert bequeathed to his widow exceed the disposable portion of his estate, because that cannot be determined until the executor has filed his final account; which the judge, in the judgment appealed from, has ordered him to file “forthwith.” According to article 1493 of the Oivil Code, the disposable portion of an estate is one-half, where, as in this case, the testator is survived by two sons. The executor filed with his answer to this suit a list of “Liabilities” which he said had to be paid, and which, besides the item of $500 which we approve, and the item of $57 and the rent claim which we do not approve, consist of the funeral expenses, taxes, court costs, and costs of administration, including attorneys’ fees; all amounting to $1,580.42. According to article 1642 of the Civil Code, a legatee by a particular title, like the widow in this instance, is not liable for the debts of the succession, if it is solvent and the legacies do not exceed the disposable portion of the estate. All that we are called upon now to decide is whether the claims of Emile and Alexander Wengert, consisting of the items of $2,-234.04 for half of the rent collected by Philip A. Wengert, $500 for half of the value of the homestead stock, and $57 for half of the dividends which he collected on the stock, all or any of these three claims, shall be taken into account in determining the net value of the estate; and all that we decide is that the estate of Philip A. Wengert owes his sons the item of $500, but not the item, of $2,234.04, nor the item of $57 if, as we infer, this item was revenue derived from property on which Philip A. Wengert had the usufruct.
 

 It appears that the defendants claim title to an eighth interest in the two houses and lots that Philip A. Wengert bequeathed to his widow, but, as the judge did not render a judgment on that question, we are not called upon now to decide it, or to say what the consequence is if the claim is well founded.
 

 The parties to the appeal of the widow, whose appeal bears the docket number 32660, have consolidated herewith an appeal taken by the executor, whose appeal bears the docket number 32670, from a judgment ordering him to pay to the widow, in necessitous circumstances, and to charge against her legacy of the money in bank, $120, in three monthly installments of $40 each. The widow moved to dismiss this appeal, but without success. Succession of Wengert, 178 La. 1027, 152 So. 747. The order for the executor to make the payments was justified by the exigency of the case. It is well settled that where a succession, under administration, is thoroughly solvent, and the widow is in necessitous circumstances, the judge may compel the executor or administrator to advance to her an allowance sufficient for her maintenance, provided the sums to be thus advanced and charged to her account are well within the amount eventually coming to her. Succession of Broadaway, 3 La. Ann. 591; Succession of Ledet, 175 La. 225, 143 So. 56.
 

 Decree.
 

 The order rendered in the proceeding No. 32670, directing the executor to advance to
 
 *494
 
 the widow $120 to be charged against her legacies, is affirmed. The judgment rendered in the proceeding No. 32660 is amended by rejecting the defendants’ rent claim of $2,234.-04, and by rejecting as of nonsuit their claim of $57 for dividends collected; and as thus amended the judgment is affirmed, and the case is ordered remanded to the Civil District Court for further proceedings consistent with the opinion rendered herein. All costs of these proceedings are to be borne by the succession of Philip A. Wengert.