## SUCCESSION OF ANNA MATHILDA MORALES, Wife of BERNARD MARIGNY.

Where it is stated in a nuncupative will that it was dictated to the Notary, yet in point of fact there was no dictation—*Held :* That it was valid *as a private act.*

When a testator causes a will to be written, whether in the presence or in the absence of witnesses, and presents the instrument to them, declaring that it contains his last intentions, it is a full compliance with article 1574 of the Civil Code. The decision in the case of *Prendergast* v. *Prendergast*, ante p. 219, re-affirmed.

MERRICK, C. J., dissenting. In the nuncupative testament the testator must himself orally decrare his wishes, otherwise there is no dictation. The mode of drawing up nuncupative wills is directed *ex professo* by articles 1563 and 1575 of the Civil Code. " Nuncupative " means to pronounce orally, or in words without writing, and the very nature of the will nuncupative implies a dictation.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Lea & Marr*, for plaintiff and appellant. *Durant & Hornor, Paxton, Bonford* and others, for defendants.

VOORHIES, J. The last will and testament of *Mrs. Bernard Marigny*, a nuncupative will by public act, is assailed on the ground that, although there is a statement in the instrument that it was dictated, yet there was not in point of fact a dictation.

As we are satisfied that, under articles 1574 and 1583 of the Civil Code, it is valid as a private act, we need not decide whether or not there had been a dictation in the sense of the law.

The facts are undisputed.

There were present in the room, the testatrix, the notary, and four persons officiating as witnesses.

The testatrix drew from her pocket a paper, which she handed to one of the witnesses, stating that it contained her last intentions, drawn up by her order. At the request of the notary the paper was handed to him ; whereupon the testatrix requested him to read the paper. This was complied with in the presence of the witnesses. She then requested the notary to copy the contents of the paper

as her will. He did so ; and, at the close of each paragraph, read the same to the testatrix paragraph by paragraph, enquiring of her whether that was her meaning. She answered each time that it was, causing the notary to read over one of the paragraphs, which she had not well understood. Then the whole, as copied from the paper, was read to her in the presence of the witnesses ; and she again declared that this was her will.

The instrument was thereupon signed by the testatrix, the notary and the witnesses.

So far as regards the number of witnesses, the presentation of the will by the testatrix, her declaration that it was her last will, it is obvious that there is a literal and strict compliance with the second paragraph of article 1574 of the Civil Code.

The only questions are, whether this article by the terms " *caused it to be written* " means a dictation ; and, secondly, whether it is imperative as to the absence of the witnesses.

In the case of *Prendergast* v. *Prendergast*, we held, that, when the testator had caused the will to be written, whether in the presence or in the absence of the witnesses, and had presented the instrument to them, declaring that it contained his last intentions, this was a full compliance with article 1574 of the Civil Code. For the reasons given in that case :

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed ; and that the last will and testament of *Anna M. Morales*, deceased, be declared valid as a nuncupative testament by private act, the plaintiff and appellee paying the costs of appeal.

MERRICK, C. J., dissenting. However accurate the copy of the paper produced by the deceased to the notary may have been, it must be conceded on all sides that it was not dictated by her.

The authorities are quite clear, that in the nuncupative testament, the testator must himself orally declare his wishes, otherwise there is no dictation.

If it *were* dictated, it was good as a nuncupative will by public act, and there the case would end.

Had the paper which the testatrix had in her possession been executed in the presence of the witnesses, and declared to be her last will and testament, and signed by her, it would *prima facie* have been sufficient, as a nuncupative will by private act. But instead of this, she handed the paper to one witness, who handed it to the notary, who copied it as he says, and read the disposition to the testatrix and witnesses. What witness, except the notary, knows but by accident or design, something was omitted from or some important word changed in the copy ? The high character of the notary in this instance is the only guaranty against such accident, and the law does not submit essential matters of form to the capacity or standing of the officer executing the instrument.

There are three articles of the Code which relate to the instrument in controversy considered as a nuncupative will under private signature.

The first is the general article 1568, C. C." It declares that " Testaments whether *nuncupative* or *mystic* must be drawn up in writing either by the testator himself or by some other person under *his dictation*." Art. 1874. " A nuncupative testament under private signature must be written by the testator himself, *or by any other person from his dictation ;* or even by one of the witnesses in the presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.

"Or it will suffice if in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament, or caused it to be written out of their presence, declaring to them that that paper contains his last will."

Art. 1575. In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest in the presence of the testator ; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least by two of them in case the others do not know how to sign ; and those of the witnesses who do not know how to sign must affix their mark. This testament is subject to no other formality than those prescribed by this and the preceding article."

These articles of the Civil Code treat *ex professo* of *nuncupative* wills. What is the meaning of the word nuncupative ? In its origin, it meant to pronounce or declare publicly in solemn words. In the civil law it means to pronounce orally or in words without writing. See 2 Black. Com. 500. Burrill Law Dic. *verbo* nuncupare. Ainsworth idem. Webster nuncupative.

The very nature of the will in question implies a dictation. The taking down of the words of the testator by another. When, therefore, article 1568 declares that the nuncupative will must be written as dictated, and article 1574 repeats the provision by saying that the nuncupative will, under private signature, must be written from dictation of the testator by some person, I think it is a provision of law which cannnot be disregarded. We said in the case of *Babineau* v. *LeBlanc et al.*, that the article 1574, C. C. admitted of two forms of execution of the nuncupative will under private signature, viz : the one where the will is *dictated* in the presence of the witnesses ; the other where it is written by the testator, or by him or her caused to be written out of the presence of the witnesses.

The will in controversy purports to be executed in the first of these forms, and should, therefore, *have been shown* to have been written as dictated.

Had the testatrix caused the will to be written out of the presence of the witnesses, and had she presented the same to the witnesses and *declared* to them that it contained her last will, the law would have presumed that she had dictated it and had caused it to be written as dictated.

To my mind the words "*out of the presence* of the witnesses," have some meaning in the article cited. As I said in substance in the case of *Prendergast*, I can understand the difference between the deliberate consideration of the dispositions of a will made at leisure at one's chamber with a single friend or alone, and with abundant time to read its provisions after it is written, and to consult with those capable of advising as to its effect, and a will hastily drawn in the presence of five or seven gentlemen of the neighborhood called to witness the making of the will. In the one case, the mind would be calm and collected ; in the oiher more or less agitated. In the former case the law might well presume that the will had been written as dictated, and in the other require that it should so appear by the proof in order that parties should not avail themselves of these circumstances to obtain by captation or surprise what would not otherwise have been given.

In the case of *Bordelon* v. *Baron*, 11 An. 676, it was shown that the testatrix presented the paper and declared the same to be her last will and testament in the presence of the witnesses. And it was also stated at the foot of the will that it "was written from her dictation by *Relph Cushman*, one of the witnesses, and that she signed the same in their presence, &c., &c., p. 677.

Succession
of
Anna Morales.

That case was, therefore, precisely in point. The testatrix caused or directed the will to be written, and she presented it and declared it to be her will. The four judges then present held that it was invalid because it was not dictated by the testatrix, and written as dictated ; a point directly made by the pleadings as understood by the Court. See 11 An. 678. In that case the question was fully considered after a thorough examination of the authorities. The case of *Eubanks* was decided upon the principle that article 1574 applies to two classes of cases. For it was held that one part of the instrument was valid because it was written as dictated, and that the other part was sufficient, because it was caused to be written *out of the presence of the witnesses.* 9 An. 148.

It is urged as an objection to the view that there is a distinction between the first and second clauses of article 1574 in regard to the execution of the will, that it would render invalid a will written by the testator himself. I see no such consequence because the article expressly declares in the first clause that the will *must be written by the testator himself* or any other person from *his dictation.* The fact that both clauses of the article refer to wills written by the testator and those written under his dictation, shows that the word dictation also has reference to both paragraphs as held in the case of *Bordelon* v. *Baron.*

I cannot perceive in what way the presence of the witnesses would be fatal to a will, if it were written as dictated. Their presence would be fatal if not so dictated, because the want of dictation would be readily proven. Not,so where the testator produces a will which he has caused to be written out of their presence, and which he has had in his possession, and examined at leisure. If he presents such will to the witnesses, and declares to them that it is his last will, it is presumed to have been dictated by him as required in the first clause of the article. Whether the presumption can be rebutted is not necessary to decide.

The question becomes the more important in view of mystic wills which are also provided for by article 1568, which says that they, as well as nuncupative wills, must be drawn up either by the testator or some other person under *his dictation,* yet when they are presented to the witnesses he is required to declare to the notary, in the presence of the witnesses, (after presenting the will) that the paper contains his testament, written by himself or another, by his dictation, and signed by him, the testator. C. C. 1577.

Again after prescribing these forms for both class of wills, nuncupative and mystic, the code declares that *the formalities* to which wills are subject must be observed, otherwise they are null and void. 1588 C. C.

The reason of the law in both cases is the same, and I find it impossible to believe that article 1568, and the first clause of 1574 were written in vain. Neither do I feel at liberty, as already said, to strike the words, " or caused to be written out of their presence," from the second clause of the article, and I therefore dissent.