Wood et al. vs. Roane.

## No. 1089.

### THOMPSON WOOD ET AL. VS. J. S. ROANE.

| | |
|---|---|
| 35 | 865 |
| 47 | 1325 |
| 35 | 865 |
| 105 | 192 |
| 35 | 865 |
| e115 | 104 |
| 35 | 865 |
| 120 | 1009 |

In the execution of nuncupative wills under private signature, the law authorizes the testator to cause his will to be written out of his presence and of that of the instrumentary witnesses.

The person who has acted as the *amanuensis* of the testator for that purpose is not disqualified, on that account, from officiating as one of the witnesses to the will, and can be counted as one of the five witnesses required by law.

Presentation of a nuncupative will, under private signature, by a testator, admits, supplies, or dispenses with a formal dictation.

Where the will of the husband and that of the wife, or any two persons, are written out by the same party, on the same day, in favor of the same beneficiary, and are presented by the testators separately to the required number of competent witnesses, with the proper statement, at different times though on the same day, they constitute two disconnected, distinct, and independent acts, and are not amenable to the prohibitions contained in Article 1572 of the R. C. C.

The burden of proving insanity rests on the party alleging it.

APPEAL from the Third District Court, Parish of Lincoln. *S. D. Pearce,* Judge *ad hoc.*

*R. G. Cobb* and *G. H. Ellis* for Plaintiffs and Appellants.

*G. L. Gaskins, M. Feazel* and *A. Barksdale* for Defendant and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action to annul the testament of Willis Wood and the decree ordering its execution.

From an adverse judgment the plaintiffs appeal.

Of the numerous grounds set forth in the petition, three only will be noticed. They are:

1. That the will was not executed in compliance with the formalities required by law in making nuncupative wills under private signature.

2. That the will was made in violation of the law which forbids two or more persons from making a testatment by the same act, for the benefit of a third person.

3. That the testator was mentally incapacitated at the time of making the will.

### I.

The testimony shows that the testator sent for his legal adviser, who responded to the call; that the latter inquired of him touching the dispositions which he wished his will to contain. Wood stated how his property stood, and said that he desired to will all of it to John S. Roane. The legal adviser, Judge E. M. Graham, then went into

another room and there wrote the will. Having drawn it up, he returned to the room occupied by the testator and read it over to him, the testator saying that it was all right. After the reading, the witness folded the will and handed it to the testator, instructing him as to the manner of presenting it to the witnesses. Judge Graham then walked out on the gallery, where the witnesses requested for the occasion were assembled, and asked them to come in and witness the will. They all then entered the room in which the testator was lying in bed and arranged themselves around the same. The ,testator holding the will in his hand presented it, saying to the witnesses : This is my last will. I want you to witness the signing of it. Judge Graham was standing on the right hand side of the bed and the remaining witnesses at the foot of the same. Judge Graham then took the will handed by the testator, and read it over to him in a distinct voice, in the presence of the other witnesses.

The testator, after being elevated in bed and propped up with pillows, signed the will and after him the witnesses, in the order in which their names appear on it. For some reason not apparent, Judge Graham read the will a second time and called the names of the witnesses. He then folded the paper and presented it to the testator, who asked if it ought not to be recorded. On being answered that there was no objection to such a course, the testator asked his adviser to carry it to the recorder's office and have it recorded, which was done.

The defects of form charged against the validity of the will are : that it was not dictated by the testator ; that it was written by one of the witnesses, out of the presence of the testator and of the other witnesses ; that it was not presented to five but to four competent witnesses.

Articles 1581 and 1582, R. C. C., contain the whole law by which the validity of the will is to be tested. The first Article provides, that a nuncupative testament, under private signature, must be written by the testator himself, *or* by any other person from his dictation, *or* even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, etc.

" *Or*, it will suffice if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament, *or caused it to be written out of their presence*, declaring to them that the paper contains his last will."

The following Article provides, that " in either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest in presence of the testator ; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses, or at least by two of them, in case the others know not how to sign, and

those of the witnesses who do not know how to sign must affix their mark.

" This testament is subject to no other formality than those prescribed by this and the preceding Article."

The contention in the case before us is, that the will was not presented and not read to, and not signed by *five* witnesses; that it was received by *four* witnesses only, the person who officiated as the fifth witness (Judge Graham) being incompetent as such, for the reason that he wrote the will.

The proposition is manifestly unsound and cannot receive our sanction.

If it were true that a witness who *draws* up an instrument is incompetent because of that agency, there would be no reason why the witness who *reads* the will to the others should not be likewise incompetent, and why, if all the witnesses were to read the will, they and each of them would not be also disqualified; nay, why the witnesses who signed the will should not also be treated in the same way. It would rather seem, on the contrary, that precisely because the witness drew up the writing, he should be competent and, in the end, the preferred one.

The law does attach particular and significant importance to the writing of the will by one subscribing it, to attest its correctness. In the confection of authentic wills, the law requires that the will be written by the notary, who is certainly a witness, and a most indispensable one, so much so, that if the will be not thus drawn up by him, and if it cannot validate in some other form, it will be treated and declared a nullity.

The objection is unplausible. It cannot stand the slightest scrutiny, and must, therefore, fall.

We deem it unnecessary to inquire and determine whether the will written by Judge Graham was or not *dictated* by Willis Wood, however much it was declared by this witness so to have been. That feature is here immaterial.

Under the circumstances it was unnecessary that it should have been. It is sufficient that it does appear unmistakably that it was caused to be written by the testator, and that it was drawn up by his *direction*, to put its validity in that respect beyond discussion or doubt. R. C. C. 1648, 1649.

Under Articles 1581, 1582, the testator must either dictate, or, in the absence of dictation, present the instrument which he has caused to be written, and declare that it contains his last intentions. Such presen-

tation and declaration admit, supply or dispense with a formal dictation.

The decision in the Bordelon case, 11 An. 676, invoked by the plaintiffs, was subsequently overruled, both in the Prendergast and Marigny cases, found in 16 An. 219 and 267.

In the last case, the undisputed facts were : "There were present in the room the testatrix, the notary, and four persons officiating as witnesses. The testatrix drew from her pocket a paper, which she handed to one of the witnesses, stating that it contained her last intentions, drawn up by her order. At the request of the notary the paper was handed to him. Whereupon, the testatrix requested him to read the paper. This was complied with, in the presence of the witnesses. She then requested the notary to copy the contents of the paper as her will. He did so, and at the close of each paragraph, read the same to the testatrix, paragraph by paragraph, inquiring of her whether that was her meaning. She answered each time that it was, causing the notary to read over one of the paragraphs which she had not well understood. Then, the whole, as copied from the paper, was read to her, in the presence of the witnesses, and she again declared that this was her will. The instrument was thereupon signed by the testatrix, the notary and the witnesses."

The will of Mrs. Marigny was authentic, and had been attacked because it had not been dictated.

The Court deemed it unnecessary to pass upon that issue, but considering that there had been a literal and strict compliance with the second paragraph of the then Article 1574 (now 1581) of the Code, they held that it was a valid nuncupative testament by private act, and so decreed.

It is somewhat singular that, while one of the learned counsel for the defense has mercilessly, without discrimination, assailed the correctness of all the opinions collected in the report in which the Prendergast and Marigny cases are to be read, and which were rendered by a Court as respectable for learning and integrity as any, he does not hesitate to commend to our careful attention for application, a decision of the same tribunal, which is found in the same volume, but which, he thinks, fortifies his position beyond all fears of capture.

The case was familiar to us. We have, however, again considered it. While we find that the Court took unusual pains in transcribing at length the testimony of the witnesses, we are satisfied that, under the evidence, the conclusions reached are in perfect consonance with the law, such as we understand its spirit and letter, and we fail to dis-

cover in what respect or degree the ruling can possibly benefit the plaintiffs in the instant case.

After analyzing that testimony, the learned Court said that it was evident that the will of Archibald Douglass was neither dictated, *nor* presented by the testator to the witnesses, thus discriminating between a *dictation* and a *presentation*.

We feel no hesitation, in the present case, in declaring that we find that the will of Willis Wood was presented, read to and subscribed by the required number of competent instrumentary witnesses, and that all the forms of the law having been rigidly and scrupulously observed, it must be executed.

We reach this conclusion with exceptional satisfaction, as no fraud or ill-practice is either alleged or proved in the making of the will, and we are at a loss to see how any could have been perpetrated. The mere possibility in the absence of any proof of the actuality of the commission of ill-doings, in the procurement or confection of wills, is entirely inadmissible as a ground for the inexecution of the last intentions of the departed ones, otherwise, even testaments by public acts, which are framed with unusual caution and solemnity, would themselves remain as the barren repositaries of sacred liberty.

## II.

The second ground of attack cannot be maintained.

The evidence shows that, after the will had been completed, Judge Graham had already retired, when he was called back and requested to make that of Mrs. Wood; that, retracing his steps, he also acted as her *amanuensis* on the occasion, and prepared for her a will by which she instituted the same Roane her universal legatee.

The charge to invalidate the *first* will is, that, with the second will, it forms one and the same act, by which Wood and his wife have conjointly instituted the same person their universal legatee, in direct violation of Art. 1572, R. C. C. (C. N. 968).

The two wills, although executed through the same agency, that is, written by the same person and consecrated before the same witnesses, are clearly the separate deeds of two different persons, and are unmistakably two distinct and independent acts, which are not amenable to the charge of *conjunction*, or unity of confection.

It is only where two or more persons, by one and the same act or instrument, which is a unit, or entirety, from its beginning to its end, conjointly dispose of their property in favor of the same party or beneficiary, that the condemnatory provisions of the law can be applied. C. N. 968; Marcadé IV, liv. I, Donations and Testaments, p. 3, on

Wood et al. vs. Roane.

Art. 968 C. N.; Toullier 5, p. 380, Nos. 345, 347; Pothier, Test. ch. 1, Art. 1; Merlin Rept. 17, Test. Conj. No. 1, p. 812; Duranton 9, No. 8.

The authority in 12 An. 880, Oreline vs. Haggerty, far from support-ing the proposition advanced, demolishes it most effectually.

*The act* was one in the authentic form. The preamble states, that at the instance of Haggerty and of his wife, the Recorder had repaired to their residence to receive their last wills in presence of named wit-nesses expressed, called upon by the testator and the testatrix for the very purpose.

After this preface, *the* act continues: And then and there per-sonally appeared the said J. Haggerty, who has dictated his will to the Recorder, who has written it such as it was dictated and as it follows.

Next comes a formal conclusion and the signatures of the testator and the witnesses; and the Recorder immediately below, and in con-tinuation, wrote a protocole similar to that heading the husband's will, using the name of the wife, after which follow a formal conclusion and the signatures of Mrs. Haggerty, the witnesses and the Recorder, *ex officio* notary.

It is evident that the instrument was in reality a connected act and not two distinct and independent acts. It bears the signature of the notary but once, and that at the conclusion of the second recital. The first will was incomplete for want of the Recorder's signature. The second will formed part of it, and both were amenable to the charge levelled against them of being one and the same act, by which two persons had willed their property to a third person. They were blended together so completely, that it could not but be said, as in truth it was the fact, that they constituted one and the same continuous act. Nullity was the unavoidable consequence of the infraction of the prohibitory law.

### III.

The charge of mental incapacity is not at all supported by any evi-dence. Among the parties who acted as witnesses at the making of the will is to be found the attending physician of the testator. Our atten-tion is merely called to the evidence without any effort to *show* what it is. We deem it unnecessary to even state what was the evidence of sanity adduced. Sanity being presumed, the burden was upon plain-tiffs to disprove or rebut it, and in this they have utterly failed.

The evidence received to probate the will justified the conclusion of correctness reached by the Judge in the *proces verbal* of the proceed-ings. C. P. 933 to 943.

There being no error in the judgment appealed from, rejecting plaintiffs' demand for the nullity of the will of Willis Wood, and the probate thereof, it is affirmed with costs.