O’NIELL, Chief Justice.
 

 Mrs. Bernadina Albers Purkert died leaving an estate, of both real and personal property, appraised at $30,991.18. Her heirs at law are a nephew and two nieces. They are the son and daughters of a deceased brother of Mrs. Purkert. She left a nuncupative will, by public act, written by Emanuel L., Weil, notary public, in the presence of three witnesses, of date the
 
 *795
 
 17th day of December, 1918. The testatrix left several small cash legacies to individuals who were related to her by marriage, and a legacy of $200 to her church, and directed that a sum not exceeding $1,000 should be spent for a tomb. She did not bequeath anything to the son or daughters of her brother, but bequeathed $5,000 to him. He died, however, before the testatrix died. As to the balance of her estate, the testatrix declared in her will:
 

 “Balance of my estate after paying all debts to go to my executor, to be given by him to any charities he may select, after giving to Jerry Schultz and Charles Thompson, both of this city, the sum of Two hundred ($200.00) each. Schultz now lives on Louisa near Rampart street; and Thompson used to live on Royal street near Elmira street.
 

 “I hereby name and appoint my friend Emanuel L. Weil, of this city, Executor of this my last will and testament, with seizen and without bond.”.
 

 Emanuel L. Weil, who was named as executor, is the notary public who wrote the will. He qualified as executor and filed a detailed account, on which he listed the privileged claims and the special legacies, and showed a balance of $26,102.36 belonging to the estate. The executor did not then claim that this residuum, of $26,102.36, belonged to him, as residuary legatee, or suggest what disposition was to be made of it.
 

 The nephew and the two nieces of Mrs. Purkert brought this suit against the executor to have the residuary clause in the will decreed null, and to be sent into possession of the residuum of the estate, as the heirs of the deceased, in the proportion of one-third to each of them, on payment of the inheritance tax and subject to the payment of any unpaid debts or special legacies.
 

 The plaintiffs, as heirs of Mrs. Purkert, did not complain of the two special legacies, of $200 each, given to Jerry Schultz and Charles-Thompson, or complain of any other of the special legacies, but averred that' the residuary clause was null and of no effect, viz.:
 

 “Balance of my estate after paying all debts to go to my executor, to be given by him to any charities he may select.”
 

 The executor, in his capacity as executor, filed an exception of no cause or right of action. The judge, after hearing argument on the exception, overruled it. The executor excepted to the ruling, and, with reservation of his exception, and again in his capacity as executor, answered the petition. He averred that the will spoke for itself; and he denied that the residuary clause was null. ’
 

 The only evidence introduced by the plaintiffs on the trial of the. case was the proof that they were the heirs at law of the deceased and that the executor was the same Emanuel L. Weil who officiated as notary public in making the will. No objection was made to such proof. The executor introduced in evidence only the will itself. The judge decided that the residuary clause, “Balance of my estate after paying all debts to go to my executor, to be given by him to any charities he may
 
 *797
 
 select,” was null, and ordered the plaintiffs sent into possession of the residuum of the estate, as the heirs of Mrs. Purkert, on payment of the inheritance tax and subject to the payment of any unpaid debts or special legacies. The executor has appealed from the decision.
 

 The judge was right in overruling the exception of no cause or right of action. If the plaintiffs had sued to annul . the residuary clause in the will for a reason or cause not shown in the will itself, the plaintiffs would have been obliged, in order to set forth a cause of action, to state the reason or cause for which they contended that the residuary clause should be annulled; because, without an allegation of nullity dehors the will itself, evidence of such a nullity would not be admissible. But the plaintiffs in this case contended — and depended upon their contention — that the residuary clause in the will was intrinsically null; hence they needed no proof dehors the will itself to show the nullity of the residuary clause, if in fact it was null on its face. The plaintiffs were not obliged to cite, in their petition, the law governing the case. The executor’s exception of no cause or right of action, necessarily, tendered the issue as to whether the alleged nullity of the residuary clause in the will was apparent on the face of the instrument. The hearing and disposition of the exception, necessarily, informed the defendant, executor, if he was not already aware of the law which the plaintiffs were relying upon. There is no reason why the plaintiffs should have been ordered to amend their petition or supplement their allegations in that respect. Counsel for the executor cite the Succession of Hernandez, 138 La. 134, 70 So. 63, 65. In that case the plaintiff alleged that a will, made in the state of New York, when the testatrix was domiciled in Louisiana and only temporarily in New York, was “void under the laws of New York and void under the laws of Louisiana.” The plaintiff did not cite or refer to the “laws of New York,” which she intended to rely upon; neither did she say why the will was not valid under the laws of Louisiana. On an exception of no cause of action, the judge ordered the plaintiff to amend'her petition in that respect, which she refused to do; and her suit was dismissed. As to the allegation that the will was “void under the laws of New York,” it was, of course, incumbent upon the plaintiff to allege what the laws of New York were, in order to prove what they were, on the question presented. Where a suit in a state court is founded upon the law of another state, the plaintiff may be compelled to cite specifically the law of the other state, before the defendant is required to answer the suit, because the courts of one state do not have judicial cognizance of the laws of another state. Succession of Marinoni, 177 La. 592, 148 So. 888. With regard to the allegation of the plaintiff in the Succession of Hernandez that the will was “void under the laws of Louisiana,” the judge must have found, on the hearing of the exception of no cause of action, that the will did not appear on its face to be “void under the laws of Louisiana.” That finding appears from the fact, as shown in the published report of the case, that the judge allowed
 
 *799
 
 the plaintiff five days in which to amend her petition “by alleging in what particulars the will in question is not executed according to the laws of Louisiana and is not valid in form as a Louisiana will.” And the fact that no cause of nullity appeared upon the face of the will in the Succession of Hernandez was confirmed by the fact that the plaintiff refused to comply with the judge’s order to point out “in what particulars” the will was said to be void under the laws of Louisiana. In that case, as in this case, the question propounded by the exception of no cause of action was whether the alleged nullity appeared on the face of the instrument.
 

 The law which the plaintiffs in this case had reference to in their allegation that the residuary clause in the will was null is article 1573 of the Civil Code, which declares that the disposing of property by last will and testament by committing to an agent the right to select the legatee or legatees is abolished, and that any testamentary disposition committed to the choice of a third person is null, even though the choice of legatees or beneficiaries be limited to a certain number designated by the testator. The prohibition is expressed in article 1573 thus :
 

 “The custom of willing by testament, by the intervention of a commissary or attorney in fact is abolished.-
 

 “Thus the institution of heir and all other testamentary dispositions committed to the choice of a third person are null, even should that choice have been limited to a certain number of persons designated by the testator.”
 

 If the residuary clause in this will is null because the selection of the legatee or legatees is committed to the choice of the testamentary executor, the nullity appears on the face of the instrument. If the residuary clause should be construed so as to make the executor, individually and in his own right, the residuary or universal legatee, the fact that he officiated as notary public in the making of the will also appears on the face of the instrument; and, if the residuary clause is therefore null, for want of the formalities required for a nuncupative will by. public act, that nullity also appears on the face of the instrument.
 

 The plaintiffs, who are the only persons who have any interest in questioning, or right to question, the validity of the will, do not complain of any of the testamentary dispositions except the residuary clause; which the plaintiffs contend is absolutely null, whether construed as an indefinite bequest to charities to be selected by the executor or as a bequest to the notary public who officiated in the making of the will.
 

 The executor contends that the intention of the testatrix, as expressed in the residuary clause in her will, was to make him, Emanuel L. Weil, individually, the universal or residuary legatee, and to leave it to him to say whether he would keep the legacy for himself or give it to such charities as he might select. Aside from the question whether this residuary clause would be null if construed as a bequest
 
 *801
 
 to the individual who officiated as notary public in the making of the will, it is very doubtful whether the testatrix intended to make Emanuel L. Weil her residuary legatee. There is much plausibility in the plaintiffs’ contention that what the testatrix intended and attempted to do was to require that her executor should give the residuum of her estate to charities, instead of allowing it to go to her heirs at law, leaving to the executor merely the choice of selecting the charities to be benefited by the legacy. It is possible that the testatrix did not understand that such a testamentary disposition might be construed as giving the legacy to the executor, for his own individual use and benefit. The testatrix did not say that she bequeathed or gave the balance of her estate to her executor or to Emanuel L. Weil. She said that the balance of her estate was to go to her executor to be given by him to charities. The expression “to go to,” in a will, means the same thing as “I bequeath to,” if the- bequest is made without any condition or stipulation as to the purpose for which the legacy is “to go to” the legatee. Succession of McBurney, 165 La. 357, 115 So. 618. But the expression “to go to” is not quite the same as to say “I bequeath to,” when the expression “to go to” is followed by a statement of the purpose for which the legacy is to go to the person mentioned. And that is particularly true when the legacy is “to go to” a testamentary executor, to be dealt with by him in his capacity as executor. It is very likely that, if Mrs. Purkert had intended to bequeath the bulk of her estate to Emanuel L. Weil, in absolute ownership, but with the hope that he would carry out her wish that the legacy should be given to charities, she would have referred to the legatee by name, so as to avoid the possible conse> quence if it should so happen that the functions of the executor would have to be performed by a dative testamentary executor. It was the duty of the notary public to advise the testatrix on that subject, as well as on the very serious question which might arise if she made him, the officiating notary public, her universal legatee. He had no precedent whatever to 'justify an assurance that a legatee — especially the universal legatee — named in a will was competent to officiate as the notary public in the making of the will, the validity of which would depend upon its being an authentic act. It is within the province of the notary public, in writing a nuncupative will, as dictated by the testator, to suggest the most appropriate phrases in which to convey precisely the intention expressed by the testator. It was so held in the following cases: Succession of Saux, 46 La.Ann. 1423, 16 So. 364; Heirs of Hennessey v. Woulfe, Executor, 49 La.Ann. 1376, 22 So. 394; Succession of Riebel, 135 La. 195, 65 So. 106; Succession of Nelson, 163 La. 458, 112 So. 298; Succession of Beattie, 163 La. 831, 112 So. 802. It is very likely, therefore, that, if the testatrix had intended to make the notary public her residuary legatee, he would have suggested that the testatrix should use such phraseology as would leave no doubt about her intention in that respect; arid it is even more likely that he would have suggestéd and insisted that another notary public- should
 
 *803
 
 write the will. The testatrix should have been informed that testamentary dispositions very similar to the residuary clause in her will had been adjudged null. For example, in the Succession of Mrs. Honoria Burke, 51 La.Ann. 538, 25 So. 387, the residuary clause in the will was very similar to the residuary clause in this case, viz.:
 

 “Now, after these bequests have been made, the remainder of my estate I desire my executors to use for any charitable institution they may select, or think of benefiting, to perpetuate my memory.”
 

 That clause was decreed null. The court interpreted it thus:
 

 “The testatrix did not designate any one as her residuary legatee, but left the choice of the legatee to her executors. This she could not validly do.”
 

 That decision and others to the same effect were cited with approval in the Succession of Reilly, 136 La. 347, 67 So. 27, 28, where the court undertook to review the jurisprudence on the subject. In the Succession of Reilly the residuary clause in the will was pronounced valid because its words left no doubt as to who was named as the universal or residuary legatee. The residuary clause was:
 

 “And the balance of whatever I may die possessed of I give and bequeath unto Bishop Thomas Heslin, to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, hereby instituting Bishop Heslin my sole heir and universal legatee.”
 

 The testator, in that case, declared that he did “give and bequeath” the legacy to Bishop Heslin, and confirmed the bequest by saying that he instituted Bishop Heslin his sole heir and universal legatee. The conclusion, therefore, was inescapable that the testator intended to vest the title to the legacy in Bishop Heslin, and to depend upon his distributing or using it as the testator directed.
 

 For the reasons which we have given, it does not seem likely, in this case, that either the testatrix or the notary public who wrote her will had in mind, at the time, that the residuary clause would have the effect of instituting the notary public as the sole heir and universal legatee. It is not necessary, however, to decide that question, because, if the intention of the testatrix was to give the residue of her estate to charities, the residuary clause in her will is null under the provisions of article 1573 of the Civil Code, and, if hex-intention was to institute the officiating notary public as her sole heir and universal legatee, the residuary clause is null for lack of the required form for a nuncupative will by public act. The residuary clause would not be valid, even as part of a nuncupative will uxider private signature, if there had been four (instead of three) attesting witnesses besides the notary public; because, although it has been decided that the officiating notary public, in making what is intended to be a nuncupative will by public act, is in fact also an attesting witness, article 1592 of the Civil Code declares that one who is instituted as an heir or named as a legatee in a will is not competent to-serve as an attesting witness to the will. The word
 
 instituted
 
 in the French text of
 
 *805
 
 the corresponding article, 1585, in the Code of 1825, was translated as
 
 constituted.
 
 In Frith v. Pearce, 105 La. 186, 29 So. 809, it was held that a will written by a notary public, and having four subscribing witnesses besides the notary public, and being intended to be a nuncupative will by public act, but being invalid as a nuncupative will by public act because the notary did not declare that the testatrix had declared that she could not sign her name, was valid as a nuncupative will under private signature, because the notary public, although he had signed the will only in his official capacity, was in fact a subscribing witness. That decision was affirmed in the Succession of Seals, 174 La. 275, 140 So. 476. A decision to the same effect was rendered in the Succession of Morales, 16 La.Ann. 267, and again in Wood v. Roane, 35 La.Ann. 865, 868, where it was said: “In the confection of authentic wills, the law requires that the will be written by the notary, who is certainly a witness, and a most indispensable one,” etc. Therefore, as article 1592 of the Civil Code declares that one who is instituted as an heir or named as a legatee in a will is not competent to serve as a subscribing witness, the unavoidable conclusion is that he is not competent to serve as notary public in the making of the will.
 

 Counsel for the executor cite article 1470 of the Civil Code, which declares that all persons may dispose or receive by donation inter vivos or mortis causa except such as the law expressly declares incapable. But that article of the Code is in the section which deals with “the capacity necessary for disposing and receiving by donation inter vivos or mortis causa.” That section of the Code does not deal with the forms or formalities prescribed for a nuncupative will by public act or for any other kind of will. Article 1592 is in the section entitled “General Rules on the Form of Testaments.” Manifestly, the reason why article 1592, in that section of the Code, while declaring that one who is instituted as an heir or named as a legatee is thereby disqualified as a subscribing witness to the will, does not declare also that he is thereby disqualified to serve as notary public, is that a notary public cannot serve as such in any deed to which he is a party or which is made directly to him personally. The notary public acts in a quasi judicial capacity, not only in the making of nuncupative wills by public act, but in many proceedings which are had before notaries public. We are referred by counsel for the plaintiffs in this case to an interesting dissertation on the subject in Succession of Tete, 7 La.Ann. 95, 96. It can hardly be doubted that an act of sale, for cash, to a notary public individually, would not be an authentic act if the buyer officiated as notary public, even though, in a sale for cash, the buyer is not obliged to sign as such. A donation inter vivos to a notary public individually would not be an authentic act if he should serve as the notary public. We doubt that any minister of the gospel or judge or justice of the peace would consider himself competent to perform his own marriage ceremony. The redactors of the Civil Code, evidently, took it for granted, when they wrote article 1592,
 
 *807
 
 that it would be understood that an instituted heir or legatee named in a will would not be competent to officiate as notary public, where the will is invalid unless it is an authentic act. Article 21 of the Civil Code declares that, where there is no express or positive law on a given subject, the judge must decide according to natural law and reason, or received usages. We are not referred to any instance where an instituted heir or legatee named in a will, which depended for its validity upon its being an authentic act, officiated as the notary public in the making of the will. In France, where the duties of notaries public are regulated by statute, a notary public is not qualified to receive a will in which one' of his relations, within a certain degree, is named as a legatee. But it was always recognized as the law in France that a notary public was not qualified to receive 'a will in which he was named as a legatee, as far as the legacy to him was concerned. Coin-Delisle, Donations and Testaments, art. 971, § 1, pp. 350-356; Dalloz Codes Annotes, art. 971, No. 14. Coin-Delisle declares that the opinion that a legacy made to the notary public is null is borrowed from the ancient law. The common law, also, on the subject, is that a notary public is not qualified to serve as such in a deed to which he is a party or in which he is personally and directly the grantee. The Legislature of this state has recognized that to be the law here. The Legislature deemed it necessary to enact a statute, Act No. 62 of 1920, to permit notaries public who are officers or stockholders of banks or other corporations “to take the acknowledgment of any'party to'any written instrument executed to or by such corporation,” but the Legislature was careful to except from the provisions of the statute any case where the notary public is a party to the instrument, “either individually or as a representative of such corporation.”
 

 Counsel for the executor' in this case say in their brief that, if Mrs. Purkert did not leave the residue of her estate to Emanuel L. Weil, with the expression of a desire that he should use it for charitable purposes, then she left the residue of her estate to him in trust for charitable purposes; and that, under that interpretation, the residuary clause in the will would be valid as a donation to a trustee for charitable purposes, under the provisions of Act No. 72 of 1918. That statute, which provides for donations to trustees for educational, literary, or charitable purposes, provides also for the organization of the trustees into a corporation (unless a trust company or bank is named as trustee), to hold the donation in trust and^ to administer it for the benefit of the beneficiary or beneficiaries. In this instance the testatrix did not indicate in any way that she intended to give the residue of her estate to Emanuel L. Weil as trustee to administer it for charitable purposes. She intended that his duties as executor would end with his giving the residue of her estate to such charities as he might select. In the Succession of Mrs. Honoria Burke, supra, where the executrix appointed three executors, they contended, in defense of the residuary clause in her will, that it should be sustained as a donation to them as trustees, under the provisions of Act 'No. 124 of 1882,
 
 *809
 
 permitting donations inter vivos or mortis causa to trustees for educational, charitable, or literary purposes. But the court said:
 

 “We think, on the contrary, the testatrix intended to charge her executors with the single specific duty of making the selection of a residuary legatee, and that upon the performance of this precise duty their power over the whole matter would be exhausted. We are of the opinion that the disposition and control of this fund by this selected institution after it would be placed in its hands, would be in virtue of ownership, not trusteeship. * * *
 

 “We do not think the bequest in question falls under the provisions of Act No. 124 of 1882. Its validity or invalidity has to be tested by the application to it of the general rules of our law touching testamentary dispositions. So tested, we do not think it can stand. * * *
 

 “The right and duty of making this choice [of a legatee] were evidently personal to the three particular persons named. Not only could these not be delegated by them to others, nor exercised by parties to be substituted in their place should they refuse to perform the duty, but there would be no legal means of forcing them into making a selection [of a legatee] in the event they were unwilling to do so, or were unable to agree upon a choice.”
 

 And so in this case there would be no legal means of forcing the executor to select a residuary legatee, or beneficiary of the legacy. To call him a trustee, instead of an executor, would not change the substance or character of the residuary clause in the will. The executor would yet be the universal or residuary legatee, who is the notary public who wrote the will.
 

 It is said in the brief of the executor that it is certain that Mrs. Purkert did not intend that her nephew and nieces, who are the plaintiffs in this suit, should receive any part of her estate. But it is true in every case, where an heir sues to annul a will, that the testator intended that his will should prevail. The heir in such a case does not claim under the will but by virtue of his right of inheritance.
 

 The judgment is affirmed.
 

 LAND, J., concurs in the result.
 

 FOURNET, J., concurs and hands, down reasons.