On Rehearing.
 

 O’NIELL, Chief Justice.
 

 This is a suit to annul the last will of the late Maurice Feitel. The will is dated June 7, 1934, and purports to be a nuncupative will by public act. It was probated a§ a nuncupative will by public act. The plaintiff, Mrs. Selma Samuel Hunt, is a niece of the testator, and is suing as his heir at law. The suit was brought against Irvin S. .Feitel, the residuary legatee and testamentary executor; but, after the case had been heard and decided, and the demand of the plaintiff rejected, and she had appealed from the decision, Irvin,S. Feitel died, and his widow, who was named as the executrix of his will, was appointed dative testamentary executrix of the will of Maurice Feitel, and is substituted as the defendant and appellee in this court.
 

 The plaintiff contends that the will is null for want of the requirement, in article 1578 of the Civil Code, that the notary must declare, in a nuncupative will by public act, that the will was “read to the testator in presence of the witnesses” after being dictated and written, and before it is signed. The plaintiff’s complaint, specifically, is that the notary’s statement in the will, that “the dictating, the writing, the reading and the signing was done at one time,” etc., is not such a declaration, that the will was “read to the testator in presence of the witnesses,” as article 1578 of the Civil Code requires. The concluding
 
 *609
 
 paragraphs in the instrument, where the notary undertook to certify that all of the formalities required by article 1578 of the Civil Code were fulfilled, are as follows:
 

 “Thus it was that the foregoing last will and testament was dictated to me, Notary, in the 'presence of all of said witnesses, and by me written as dictated.
 

 “And thereupon the said testator has hereunto signed his name, in presence of said witnesses, each of whom has also signed the same in my presence and that of the testator, and in presence of each other.
 

 “And the whole of the foregoing, the dictating, the writing, the reading and the signing, was done at one time, without turning aside to other acts — the whole in the sight and presence of all of said witnesses and me, Notary.”
 

 Article 1578 of the Civil Code, referring to the nuncupative will by public act, provides :
 

 “This testament must be dictated by the testator, and written by the notary as it is dictated.
 

 “It must then be read to the testator in presence of the witnesses.
 

 “Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts.”
 

 Article 1595 of the Civil Code declares that in the making of a testament the formalities prescribed in the Code must be observed, or the testament will be null. The plaintiff in this case relies upon the ruling in Graves v. Graves, 10 La.Ann. 212, and the ruling in the Succession of Wilson, 177 La. 119, 148 So. 1, to support her contention that the declaration in the will in contest, that “the whole of the foregoing, the dictating, the writing, the reading and the signing, was done at one' time,” etc., is not the equivalent of a declaration that the will was “read to the testator in presence of the witnesses,” as required by article 1578 of the Civil Code. The defendant, on the other hand, relies upon the following decisions to support his ■ contention that the declaration in the will, with regard to its having been read to the testator before it was signed, is sufficient, viz.: Pizerot v. Meuillon’s Heirs, 3 Mart.(O.S.) 97, 115; Seghers v. Antheman, 1 Mart.(N.S.) 73; Forstall v. Forstall, 3 Mart.(N.S.) 367; Succession of Sparks (on rehearing), 12 Rob. 37; Rongger v. Kissinger, 26 La.Ann. 338; Succession of Marqueze, 50 La.Ann. 66, 68, 23 So. 106; and Duhon v. Duhon, 161 La. 499, 109 So. 44.
 

 The question of validity or invalidity of the will under attack would be an interesting one, but for the’question of the plaintiff’s right to bring the suit. Her right to question the validity of the will which she is suing to annul was challenged at the beginning of the suit, and is the first question to be decided. Before answering the plaintiff’s petition, the defendant, Irvin S. Feitel, pleaded that the plaintiff had no interest in the question of validity of the last will of Maurice Feitel, and hence had no right of action to question its validity, because Maurice Feitel left three previous wills, in every one of which the defendant, Irvin S. Feitel, is named as the residuary
 
 *611
 
 legatee and testamentary executor, and in none of which wills is the plaintiff, Mrs. Hunt, named as a legatee. The judge referred the plea of no right of action to the merits of the case. The defendant then, under reservation of his plea that the plaintiff had no right of action, answered, insisting that the will dated the 7th of June,
 
 1934,
 
 which alone was under attack, was valid. The defendant, in his answer, insisted again that the plaintiff had no interest or concern in the question of validity of the last will of Maurice Feitel, dated the 7th of June, 1934, because, .if that will was not valid, the defendant would inherit as the residuary legatee named in the next preceding will of Maurice Feitel, dated the 3d of November, 1933; and, if neither of these wills was valid, the defendant would inherit as the residuary legatee named in the next preceding will, dated the 31st of August, 1932; and, if none of these three wills Was valid, the defendant would yet inherit as the residuary legatee named in the will of Maurice Feitel dated the 26th of February, 1932. The three wills, dated, respectively, February 26, 1932, August 31, 1932, and November 3, 1933, were attached to and made a part of the defendant’s answer. Each one of the instruments purports to be the last will of Maurice Feitel, in nuncupative form, by public act, made before the same notary public who officiated in the making of the will which is now under attack.
 

 In every one of the four wills Irvin S.Feitel is named as the residuary legatee and testamentary executor, and in none of the wills is the name of the plaintiff, Mrs. Hunt, mentioned. The special legacies, bequeathed to the several particular legatees, are in some repects not the same in every will. In the .will dated February 26, 1932, and again in the will dated August 31, 1932, special legacies were bequeathed to ten particular legatees; and in the will dated November 3, 1933, and again in the will dated June 7, 1934, special -legacies were bequeathed to twelve particular legatees.
 

 The defendant, in his answer to the suit, prayed, first, that the plaintiff’s demand should be rejected; and, second, that, if the will dated June 7, 1934, should be annulled, the will dated November 3, 1933, should be probated and ordered executed; and, third, that, if that will also should be declared null, the will dated August 31, 1932, should be probated and ordered executed; and, fourth, that, if that will also should be declared null, the will dated February 26, 1932, should be probated and ordered executed. Each one of the alternative prayers was preceded by the proviso that it should not be considered unless the plaintiff should be held yet to have an interest in the question as to which one of the wills of Maurice Feitel should prevail.
 

 1 When the case came on for trial, counsel for the plaintiff asked the court to strike out of the defendant’s answer the references to the three wills antedating the will that was under attack. The judge overruled the motion, and in his ruling an■nounced:
 

 “The court holds that, inasmuch as the plaintiff is an heir at law, and not a legatee under any of the wills, and inasmuch as, under the alternative prayers of the defend
 
 *613
 
 ant, the effect will be to exclude the plaintiff if any one of the wills is held valid, the motion to strike out is denied. The court, however, informs counsel [for the plaintiff] that, inasmuch as replication is not allowed under the law, if he is surprised by any testimony and wants additional time to summon witnesses, the court will grant the opportunity.”
 

 Counsel for the plaintiff then proceeded to prove — and the fact was admitted — that the plaintiff was a niece of the deceased, Maurice Feitel, and counsel then offered in evidence the will dated June 7, 1934, announcing that the purpose of the offering was merely to prove rem ipsam, or the alleged nullity of the will. It is noted in the note of evidence, made during the hearing of the testimony, that at this stage of the trial the court heard arguments of counsel for both sides on the question of validity of the will under attack, dated June 7, 1934. It is noted also that at the conclusion of the arguments the judge announced that he would reserve his ruling on the question of validity or invalidity of the will that was under attack, and would pass upon the question of validity of the previous wills when offered in evidence with supporting testimony. The attorney representing the plaintiff then asked for a delay of fifteen days (from March 30 to April 14) to confer with other parties having an interest in the matter, and to summon witnesses, if desired, “in refutation” of the defendant’s alternative claim under one or another of the previous wills of Maurice Feitel. The request for and the granting of the postponement of the’ trial is recorded in the note of evidence. In the statement of the attorney for the plaintiff, “that he desired additional time to confer with other interests,” he had reference, obviously, either to the fact that there were other heirs of the testator, in the same degree with the plaintiff, or to the fact that the interests of some or all of the particular legatees named in the several wills might be affected by the question as to which one of the wills should prevail as the last will of Maurice Feitel. If any one of the four wills was valid, it was a matter of no concern to the defendant, as residuary legatee and testamentary executor, as to which one of the wills should be held valid. The judge virtually so ruled when he withheld his judgment on the question of validity or invalidity of the will which was under attack, in order to hear evidence on and to decide the question of validity and effect of the previous wills.
 

 Testimony was admissible, and was necessary, to prove that the will dated August 31, 1932, as well as the will dated February 26, 1932, if not valid as a nuncupative will by public act, was valid and entitled to probate as a nuncupative will under private signature, because there were four witnesses to each of these wills; and under the well-established jurisprudence such a will may be probated and executed as a nuncupative will under private signature, the notary public being the fifth witness, if the will lacks one or more of the formalities prescribed by article 1578 of the Civil Code for a nuncupative will by public act. Succession of Morales, 16 La.Ann. 267; Wood v. Roane, 35 La.Ann. 865, 868; Frith v. Pearce, 105 La. 186, 29 So. 809; Succession of Seals, 174 La. 275,
 
 *615
 
 140 So. 476; Succession of Purkert, 184 La. 792, 805, 167 So. 444, 448.
 

 When the trial of the case was resumed, at the expiration of the fifteen days’ postponement, the attorney representing the defendant'introduced in evidence, first, the will dated November 3, 1933, second, the will dated August 31, 1932, and, third,, the will dated' February 26, 1932, Each offering was prefaced with the same protestation that was made in the defendant’s answer to the suit; that is, that the evidence was offered merely to show that the plaintiff had no interest in questioning' — and hence no right to question — the validity of the will dated June 7, 1934. As each one of the three wills was offered in evidence, the attorney representing the plaintiff urged the objection, first, that the will could not have any effect, and hence was not admissible in evidence, because it had not been probated, and, second, that the will was null for the same reason that the will under attack, dated June 7, 1934, was null; that is, that the statement in the instrument, that the will was read at the time when it was made, was not a sufficient declaration that the will was “read to the testator in presence of the witnesses,” as required by article 1578 of the Civil Code. The judge allowed the three wills to be introduced in evidence subject to the plaintiff’s objection.
 

 The attorney representing the plaintiff then proceeded to prove — and did prove beyond all doubt — that the will dated August 31, 1932, as well as the will dated February 26, 1932, was made with all of the formalities required by article 1581 of the Civil Code for the making of a nuncupative will under private signature. The attorney representing the plaintiff then attacked the two wills, as well as the will dated November 3, 1933, and the will dated June 7, 1934, by producing several witnesses to prove that the testator was deaf and blind at the time when the wills were written. , Some of the witnesses for the plaintiff testified that the testator’s eyesight and hearing were both badly impaired during the years 1932, 1933, and 1934; but the evidence as a whole is convincing that neither the eyesight nor the hearing of the testator was much impaired at that time. With his glasses he read without any difficulty. His sense of hearing was such that he could carry on a conversation with a person five or six feet away, if the other person would speak a little louder than in an ordinary conversation. The notary public and all of the witnesses to the will dated August 31, 1932, and all of the witnesses to the will dated February 26, 1932, except one, who had moved away from the city, testified that the notary, kpowing that the testator was slightly deaf, read the will in a louder tone than the ordinary, and that the testator heard and'understood every word of it, as indicated by his comments and his expressions of approval. During the reading of one of these wills— and perhaps also during the reading of the other — the testator told the notary that it was not necessary for him to read so loud. The notary and the witnesses testified also that the testator had no difficulty in reading or signing his name. In fact, he had little or no reading to do in the making of either of these wills, because he did not refer to any memorandum in the
 
 *617
 
 dictating of either will. On this subject, it is sufficient to say, without reviewing the testimony, that the evidence is convincing that the impairment of the eyesight and of the hearing of the testator, or of either his eyesight or his hearing, at the time when he made his wills, was so slight that it did not interfere at all with his making a will.
 

 It is not necessary to consider the will dated November 3, 1933, because that will is subject to the same attack that is made upon the will dated June 7, 1934, and, having only three subscribing witnesses, is not entitled to probate as a nuncupative will under private signature. If the cause for which the plaintiff seeks to annul the will dated June 7, 1934, should be deemed a sufficient cause to annul it, it would be a sufficient cause to annul also the will dated November 3, 1933. But it is not so with regard to either the will dated August 31, 1932, or the will dated February 26, 1932. If the will dated June 7, 1934, and the will dated November 3, 1933, should be annulled, the will dated August 31, 1933, would be entitled to probate as a nuncupative will under private signature; and if that will also should be annulled, for any cause, the will dated February 26, 1932, would be entitled to probate, not only as a nuncupative will under private signature, but even as a nuncupative will by public act. There is no ground for dispute about that, because, in the will dated February 26, 1932, immediately following the paragraph in which it is said that the will was dictated by the testator to the notary and by him written as dictated, this declaration is made by the notary, viz.:
 

 “I thereupon read said will and testament in a loud and audible voice to said testator, who declared to me, Notary, that he perfectly understood the same and persisted therein.”
 

 During the trial of the case the attorney representing the plaintiff put great stress upon the fact that each one of the four wills was prefaced with a clause revoking all previous wills, thus: “This is my last will and testament and I hereby revoke all previous wills made by. me.” The law on the subject, however, is that, if a will containing a clause' revoking a previous will, or revoking all previous wills of the testator, is annulled, the revoking clause loses its effect, and the last preceding will stands unrevoked. Rev.Civ.Code, art. 1692; Hollingshead v. Sturgis, 21 La.Ann. 450; Succession of Hill, 47 La.Ann. 329, 16 So. 819. The reason for this is that the Civil Code requires, in article 1692, that an express revocation of a testament or testamentary disposition, to have effect, “must be made in one of the forms prescribed for testaments, and [be] cIothe(i with the same formalities.”
 

 Our conclusion is that, inasmuch as the plaintiff in this case would gain nothing if the will dated June 7, 1934, should be annulled, she has no right of action to have it annulled.- Article 15 of the Code of Practice declares: “An action can only be brought by one having a real and actual interest which he pursues.” See, also, Major v. Esneault, 7 La.Ann. 51, 53; Succession of Burnside, 35 La.Ann. 708;
 
 *619
 
 Waterhouse v. Star Land Co., 139 La. 177, 71 So. 358; Succession of Williams, 107 La. 610, 32 So. 65; Succession of Lavergne, 129 La. 119, 55 So. 734; Succession of Herber, 117 La. 239, 41 So. 559; Warner v. Lewis, 167 La. 49, 118 So. 688. In Major v. Esneault, it was held that the heirs of the testator had no right of action to contest the validity of the special legacies in his will, when the court came to the conclusion that the residuary legacy, which also was contested, was valid. The court, having concluded that the residuary legacy was valid, and adverting then to the attack made' upon several special or particular legacies, said: “The plaintiffs [heirs of the testator] have no interest in contesting the validity of those [special] legacies, if they fail, they inure to the benefit of the universal legatee.” In the Succession of Burnside it was said: “The universal legatee takes everything that has not been validly given away.” And, in the Succession of Herber, 117 La. 239, 241, 41 So. 559, 560, it was said:
 

 “If the dispositions in favor of the universal legatee be valid, the plaintiff [heir of the testatrix] has no interest to attack, and discloses no cause of action in attacking the particular dispositions of the will, since, in that event, if they be annulled the property intended to be disposed of by them would fall into the residuum. Succession of Burnside, 35 La.Ann. 708.”
 

 An heir, suing to annul the last will of the deceased, is barred as effectively if it be proved that there is a residuary legatee under a previous, valid will, as if a nearer relation to the deceased stood in the plaintiff’s way. In fact, according to article 1607 of the Civil Code, a testamentary disposition in the form of a residuary legacy, or universal legacy, is called the institution of an heir. And it is declared in article 940 of the Civil Code, referring to the maxim, le mort saisit le vif, “This rule applies [not only to legal heirs but] also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.” And, in article 1609, it is said that if a testator dies without leaving a forced heir, “the universal legatee, by the death of the testator, is seized of right of the effects of the succession, without being bound to demand the delivery thereof.” See Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445.
 

 On the first hearing of this case, in this court, a majority of the members of the court were of the opinion that the wills which antedated the one under attack could not be considered, even for the purpose of determining whether the plaintiff had a right of action, because these previous wills had not been admitted to probate. The opinion was based upon article 1644 of the Civil Code, and upon certain expressions found in the opinion rendered in the Succession of McDermott, 136 La. 80, 66 So. 546, 547. Article 1644 of the Civil Code declares that a testament must be probated before it can have effect. But that means merely that a testament cannot be executed, or carried out, until the testament has been probated. It does not mean that a testament that has not been probated is not admissible in evidence, or entitled to consideration, in determining whether a person who is suing by virtue of the testa
 
 *621
 
 ment, or is suing in spite of it, has a right of action. On the contrary, the decision in the Succession of McDermott supports the proposition that it is not necessary that a testament shall be probated in order that it may be considered in determining whether that testament or a subsequent one made by the same testator shall prevail. In the case of the Succession of McDermott the testatrix left five nuncupative wills by public acts, dated, respectively, August 4, 6, and 9, and September 12, 1912, and July 8, 1913. In this last -will the testatrix merely confirmed the will dated September 12, 1912, after making some changes. In the first will, dated August 4, 1912, Miss Alice J. Clohecy and the Gilmores were given the bulk of the estate, and Thomas Gilmore was named as executor; but none of these legatees was mentioned in any of the four subsequent wills. The testatrix died on December 16, 1913, and Thomas Gilmore,as the executor named in the will dated August 4, 1912, opened the succession and tendered that will for probate. The judge refused to probate the will because of the existence of the will dated September 12, 1912, and the will dated July 8, 1913, confirming the one dated September 12, 1912. The last two wills were probated a few days later; whereupon Miss Clohecy and the Gilmores sued to annul them, and to annul also the intervening wills, dated, respectively, August 6 and 9, 1912. These wills, dated, respectively, August 6 and 9, 1912, were the wills which the court said were not to be considered. The reason given by the court for saying that it was unnecessary to consider the two intervening wills, dated August 6 and 9, 1912, was that they had been revoked, and that no one was claiming anything under them. It was in that connection that the court said:
 

 “As the wills of August 6 and 9, 1912, were revoked by the will of September 12, 1912, and have never been presented for probate, and the defendants claim nothing under said wills, we think that the question of their validity vel non is not a relevant issue in this litigation. ‘No testament can have effect unless it has been presented to the judge of the parish in which the succession is opened.’ ” &c.
 

 Of course, the two wills of Miss McDermott, dated, respectively, August 6 and 9, 1912, had not been probated for the same reason that her will dated August 4, 1912, •was not probated; that is, that these wills were revoked by the subsequent wills. But the fact that the will'dated August 4, 1912, was not probated did not deprive the plaintiffs of a right of action under it.
 

 If we maintain, in a case like this, that the court cannot consider a previous will merely because it has not been probated, in determining whether the plaintiff has a right of action, and if. the plaintiff should succeed in annulling the last will, the plaintiff would have to bring another suit to annul the next preceding will, when probated; and, if the plaintiff should succeed also in annulling that will, he or she would have to bring another suit to annul the next preceding will, when- probated, and so on down the line; and, if the plaintiff should eventually come to a valid will, all of his or her victories — and all of the time and trouble given to the litigation — would
 
 *623
 
 be in va.in. ■ We must bear in mind that, in a case where the testator has made several wills, in each of which he has revoked the preceding will or wills, the only one that can be probated is the last will. In this case, for instance, Irvin S. Feitel, although he is the residuary legatee and testamentary executor named in all of the wills, cannot ask to have one of the previous wills of the testator probated unless and until the last will is annulled. Hence, to maintain that the wills which have not been probated cannot be considered, in determining whether the plaintiff has a right of action to annul the last will of the testator, would lead to strange consequences, and would be contrary to that policy of the law which is opposed to a multiplicity of suits, and which is so appropriately expressed in Godden v. Burke’s Executors, 35 La.Ann. 160, 164, thus:
 

 “It is the policy of the law, in its abhorrence of a multiplicity of actions for the same purpose, that all facts tending to terminate a controversy touching one ob-' ject should be introduced, considered and finally adjudicated upon, in order to set differences on that subject forever at rest”
 

 In a very recent case, the Succession of Wengert, 180 La. 483, 156 So. 473, the court cited with approval an excerpt which the court had quoted literally in Bissell v. Bodcaw Lumber Co., 134 La. 839, 64 So. 792, from a very old case, Johnson v. Rannels, 6 Mart.(N.S.) 621; 622, thus:
 

 “There was no necessity for proving an order from any court of probates in this state for the execution of the will. This is only required when the will is to be carried into execution by the executor suing for the property or the estate; not when the will is offered as evidence of title in the legatee against a party claiming title.”
 

 It is contended in the briefs for the plaintiff and appellant that all of the four wills in contest are null because in every one of them the notary public who wrote them, and who is an attorney at law, was appointed as the attorney to open and close the succession. ’ This argument for the plaintiff was made in the civil district court. It is argued that the appointing, by a testator, of an attorney to have the will probated, or to open and close the succession, is a testamentary disposition, and should be governed by the rules affecting legacies generally. Hence it is argued, specifically, that the appointing of the notary public, who officiates in the making of a nuncupative will by public act, as the attorney to open and close the succession, or to have the will admitted to probate and execution, is null,-by the same rule that forbids the bequeathing of a legacy to the notary public who officiates in the making of the will. The attorneys for the plaintiff, appellant, cite the Succession of Purkert, 184 La. 792, 167 So. 444; where it was held that a residuary legacy, if construed as being bequeathed to the officiating notary public, was for that reason null. If the appointing of the officiating notary public as the attorney to open and close the succession should be regarded as a legacy,
 
 or
 
 as an ordinary testamentary disposition, it would be null, according to the ruling in the Succession of Purkert; but its nullity would not affect
 
 *625
 
 the other testamentary dispositions; and the heir of the testator, if barred by a residuary clause in a valid will, has no interest in questioning any other of the testamentary dispositions. In the Succession of Purkert it was the residuary legacy that was contested by the heirs of the testator. The special legacies were not contested, and they remained valid. But the reference to Coin-Delisle, Donations and Testaments, art. 971, pp. 350-356, and particularly No. 15, p. 354, and Dalloz, Codes annotés, art. 971, No. 14, and No. 15,.p. 598, shows that this court’s opinion was that a nullity resulting from the notary’s being a beneficiary under a will would be confined to the legacy bequeathed to the notary, and would not affect the other dispositions in the will. These commentators maintain that it is only when — and to the extent that —the notary public acts for his own private advantage, by writing a testamentary disposition in his own favor, that his act loses its public character. The question whether such a nullity in a nuncupative will by public act should annul the whole will, or should be confined to the legacy that is bequeathed to the disqualified legatee, has been the subject of discussion and dispute among the French commentators. Cf. Baudry-Lacantinerie et Colin, Traité de droit civil XI, Des donations entre-vifs et des testaments II (3d Ed.1905) No. 2012, p. 83; and Demolombe, Traite des donations entre-vifs et testaments IV, No. 173, p. 180. See, also, Tulane L.Rev.Vol. XI, No. 3, p. 495, April, 1937.
 

 Our opinion, however, is that, in the making of a nuncupative will by public act, the appointing, by the testator, of the officiating notary public, as the attorney to have the will admitted to probate, is valid. It was decided in Rivet v. Battistella, 167 La. 766, 120 So. 289, that the testamentary executor was obliged to respect the testator’s appointment of the attorney to open and close the succession. The testator’s appointment or selection of an attorney at law to attend to the probate of his will and the settlement of his succession is not a donation mortis causa. If it were governed by the rules relating to donations inter vivos, it would be classed as a “remunerative donation,” which, according to article 1525 of the Civil Code, “is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift.” The probate judges may be depended upon to see that the value of the services rendered by an attorney appointed by a testator to open and close his succession, shall not be so “inferior” to the compensation which the attorney shall receive in consequence of his appointment, as to make the appointment a donation mortis causa. The appointment of an attorney, by a testator, to attend to the 'probate of the will, or to the settlement of the succession, is more analogous to the appointment of a testamentary executor, than it is to the giving of a legacy. In Davenport v. Davenport, 116 La. 1009, 41 So. 240, 114 Am.St.Rep. 575, it was held that the appointment of one of the subscribing witnesses as testamentary executor, in a nuncupative will by public act, was valid, notwithstanding article 1592 of
 
 *627
 
 the Civil Code declares that a legatee is not a competent witness to the will in which he is named as a legatee. Davenport v. Davenport, therefore, in effect, maintains that the naming of a testamentary executor in a will is not the making of a donation mortis causa. By analogy we maintain that the appointing of an attorney in a testament, to attend to the probate of the testament and the settlement of the succession, is not the making of a donation mortis causa. Our conclusion, therefore, is that none of the wills in contest is invalid in that respect.
 

 The judge who decided this case did not give written reasons for his decision; but, from his rulings, which we have described in detail, it is obvious that his reason for rejecting the demand of the plaintiff was that she had no interest in contesting, and hence no right of action to contest, the last will and testament of the deceased, Maurice Feitel. The complaint that the testator appointed the officiating notary public as the attorney at law to open and close his succession is urged against all of the wills, but it is not a cause to annul the wills.
 

 The judgment heretofore rendered by this court having been set aside by the granting of a rehearing, the judgment appealed from is now affirmed. The right is reserved to the plaintiff to apply for a rehearing. ,
 

 LAND and PONDER, JJ., dissenting.